These suits grow out of the same accident, a three-wheeled motorbike-automobile collision which occurred about four o'clock on the afternoon of September 15, 1940, on the extension of Government Street, about one mile east of the City of Baton Rouge. The three-wheeled motorbike was owned by McVae R. Benton and Lorenzo A. Blouin and was operated and driven by a colored boy named Tommy McClendon. The automobile was a Ford owned by Robert Thibodeau, which was being driven by Robert Thibodeau, Jr., the minor son of the owner. The motorbike was so badly damaged that the Great American Insurance Company, the collision insurance carrier on the same, paid the sum of $405 to the owner under its collision policy. For its share of the damages to the Ford, New Amsterdam Casualty Co., the collision insurance carrier on the Ford, paid the sum of $131.40 to the owner. Each collision insurer obtained proper subrogation.
In the first suit filed, the Great American Insurance Company, the collision insurance carrier on the motorbike is the plaintiff and New Amsterdam Casualty Company, the liability insurance carrier of the Ford is the defendant, and the purpose of the suit is the recovery of $405 paid by it to the owner of the three-wheeled motor bike. In the second suit, the New Amsterdam Casualty Company is the plaintiff and the Great American Indemnity Company, the liability insurance carrier on the three-wheeled motor bike, McVae R. Benton and Lorenzo A. Blouin, the owners of the motorbike, are the defendants, in solido, and the purpose of the suit is the recovery of $131.40 paid by it to the owner of the Ford. It was agreed that these two suits should be consolidated for the purpose of taking evidence, with the understanding that a separate judgment would be rendered in each case. This agreement also governs the action of this court. There is no contest as to the amounts involved.
After a trial there was judgment dismissing the suit of the Great American Insurance Co., and in favor of New Amsterdam Casualty Co., and against Great American Indemnity Co., McVae Benton and Lorenzo A. Blouin, solidarily, for the sum of $131.40, with legal interest thereon from judicial demand until paid, with costs. Great American Insurance Company, plaintiff in first suit, Great American Indemnity Co., McVae Benton and Lorenzo A. Blouin, defendants in the second suit, have appealed.
The record shows that the accident occurred at about 4 o'clock on the afternoon, *Page 242 
at a point about thirty feet west of the intersection of Government and Sanders Streets, about a mile from the corporation limits of the City of Baton Rouge. However, there are several residences and business establishments in the vicinity of the scene of the accident. There are signs along Government Street in that neighborhood stating that the speed limit was 25 miles per hour. Extension of Government Street was the main artery out of Baton Rouge to New Orleans and runs practically east and west. Sanders Street leads south from Government Street. The weather was clear and the street was dry. The motorbike and the Ford were travelling west. The Ford struck the motorbike from the rear, causing considerable damage to each vehicle.
For convenience, we will hereafter refer to the Great American Indemnity Company and the Great American Insurance Company as the Companies, and the New Amsterdam Casualty Company as the Casualty Company.
The Companies contend that the accident occurred solely through the negligence of the driver of the Ford in driving at a grossly excessive rate of speed; in not keeping a proper lookout, and in attempting to overtake another vehicle without passing a safe distance to the left thereof, in failing to give an audible and sufficient warning of his intention to do so, and in attempting to overtake and pass the motorbike at or near an intersection of the highway.
The contention of the Casualty Company is that the accident occurred through the sole negligence and fault of the driver of the motorbike in attempting "to turn his motorbike in the street in the middle of the block without looking in time and without signal or warning of any kind at a time when it was impossible for the said Robert Thibodeau, Jr., to avoid the collision."
There are four witnesses who testified in the case. Elridge Wright and Hazel McCardell for the Companies and D.B. Friday and Robert Thibodeau, Jr., for the Casualty Company.
We shall first consider the testimony of the witnesses for the Companies. Mr. Wright was in the northeast corner bedroom of a house which is on the southwest corner of Sanders and Government, sitting on a bed about four feet from the window facing east; this house faces Government Street, or north, and is about 25 feet from the street. He states that he had just arrived from work and was awaiting a friend and a package from the Golden Slipper, a night club and barroom operated by defendants Benton and Blouin and to whom the motorbike belonged. When he heard the motor of the motorbike, he rushed to the north window, and saw the motorbike about in the center of the intersection of Sanders and Government Street, travelling west, with its left rear wheel and its front wheel south of the center line and the right rear wheel north of the center line of Government Street, going very slowly; thereafter, the motorbike swung back to the right and picked up speed. He first saw the Ford before it entered the intersection and the Ford was travelling at a speed "somewhere between forty and sixty miles an hour." The motorbike travelled about thirty feet between the time he first saw it and the time of the actual impact. At the time of actual impact, the motorbike had its front and right rear wheels across and north of the center line of Government Street, and the left rear wheel remained possibly a foot on the south side of the center line. The Ford started skidding about five feet east of the intersection and skidded through the intersection and thirty feet past, until it collided with the motorbike. About one-third of the right front of the Ford collided with the left rear half of the motorbike and the Ford at the time of actual collision had its right front wheel about on the center line and its left wheel in the left (south) lane of the road, headed straight toward Baton Rouge. Due to the impact the driver of the motorbike "went straight up in the air and did a couple of flips and landed on the side of the road". The Ford "continued sliding a few feet". On cross-examination he states "the State police took measurements of that particular accident", and that the only skid marks were "just a few feet after the collision", and that the Ford stopped "shortly after the collision, three or four feet".
Miss McCardell, who lived near the scene of the accident and who was on the north side of Government at the northeast corner of the intersection of Sanders and Government Streets, preparing to cross from the north to the south side of Government Street, testified that she did not see all the details of the accident. Prior to the accident she saw the motorbike down near the Seven Up plant, a block east of Government and Sanders Streets, coming west towards Baton *Page 243 
Rouge, at a moderate rate of speed, and at which time she did not see the Ford. She awaited the motorbike to pass before attempting to cross the street. In the meantime two of her cousins had already crossed the street, and she engaged them in conversation. While engaged in conversation with her young cousins, and after the motorbike had passed her, an automobile passed by her and the driver blew the horn, and when she turned around to look to see who it was, the driver waved at her. She did not recognize the driver on account of trouble with her eyes. She then turned to the small children and inquired as to who the person could be. Then immediately after she heard the crash and upon looking west, the direction from which she had heard the crash, she "saw the car, the same car that had passed, and the only thing I saw besides the car was a lot of dust around the portion of the highway where the accident happened and a man up in the air that had been knocked in the air". After the accident, the Ford was practically in the center, the front portion slanting a bit to the south. She states that the accident occurred in front of "Little Mexico", a hot tamale stand on the south side of Government, west of the intersection of Sanders and Government Streets. According to the stipulation in the record, the approximate distance from the western edge of the black top of Sanders Street, along the southern edge of Government Street, and to a point opposite the eastern property line of the lot located by the stand known as Little Mexico is 90 feet. She would not attempt to estimate the speed of the Ford, but stated that "it was going a good bit faster than the motorcycle". Between the time the Ford passed her and the driver waved and the time she heard the crash, she did not see or hear any other car pass going west, on Government Street. Upon going down to the scene of the accident, she ascertained that the driver of the car which passed her was Bobby Thibodeau, whom she had known before the accident.
Thus it will be seen that these witnesses do not testify to what actually happened at the time nor how the collision took place. According to Mr. Wright he saw the motorbike in the intersection, about in the center of the intersection and straddling the center line of Government Street in the act of turning into Sanders Street, then veered to the right and continued forward on Government. He then saw the Ford approaching on the east side of Sanders Street, and afterwards saw or heard the driver of the Ford apply his brakes about five feet east of Sanders Street, while travelling in the center of Government. He does not seek to explain what caused the Ford driver to apply his brakes rather than cut to his left, nor does he seek to state what the motorbike was doing or attempting to do. Furthermore, he places the left rear wheel of the motorbike to the south of the center line of Government Street at the time of the collision, yet he testified that the motorbike had returned to his right lane of travel while in the intersection or about to leave the intersection. Miss McCardell does not pretend to explain the collision, not having seen it.
We consider now the testimony of the witnesses for the Casualty Company. D.B. Friday was travelling west on Government Street, the same direction the motorbike and the Ford were travelling. He states that the Ford passed him about half a block to the east of the intersection of Sanders and Government Street; that the Ford was travelling about 25 to 30 miles per hour when it passed him, and continued at that rate until near the point of collision. He explains how the accident took place:
"When the Thibodeaux car passed me I was on my right-hand side of the street and Thibodeaux pulled back to his right-hand side of the street in the line of traffic. The three-wheel motorcycle occupied by a colored boy passed across the street intersection at Sanders Street and Thibodeaux's car proceeded across the intersection about 25 feet behind the motorcycle. Just after the motorcycle crossed the intersection I saw the colored boy look back over his left shoulder and then suddenly turned his motorcycle to his left, then cut back to his right, and back to his left again, and when he cut to his left the last time he apparently was attempting to turn around in the center of the street. Shortly after the negro looked back and his motorcycle began to cut to the left and back to the right the driver of the Thibodeaux car apparently applied his brakes as I observed his wheels skidding and his car slowing down and when Thibodeaux car was immediately upon the motorcycle the colored boy apparently attempted to *Page 244 
turn then back to his right pulling toward the right-hand side of the street he was then immediately in front of Thibodeaux's car and the driver of the Thibodeaux car was apparently steering his car further to the right-hand side, the collision occurred, Thibodeaux's car striking the motorcycle in the rear and it appeared to me that the impact was nearer to the left rear wheel than to the right."
He states that the collision or impact of the two vehicles occurred at a point about 25 feet west of the intersection of Sanders and Government Streets. He places at the time of impact, the motorbike very near the center line of Government Street with his left rear wheel slightly on the left hand side of the center line, but the bulk of the machine on its right hand side. He states that the motorbike operator did not give any signal or warning that he was going to attempt to turn around in the road, and that he was looking directly at him. On cross-examination, or rather cross-interrogatory, he is emphatic that Thibodeau, the driver of the Ford, was travelling within a range of from 25 to 30 miles per hour until he applied his brakes shortly before the collision. He has no recollection of Thibodeau waving at a girl on the north sidewalk of Government Street which might be possible in that Thibodeau was in the front of him. However, he states, "Of course, when I saw the colored boy looking back over his shoulder and begin to wabble near the center of the street and apparently start to turn around naturally I watched the movement of the two vehicles more carefully until the impact occurred". He states that the motorbike was running at a moderate rate of speed, around 15 miles per hour, but somewhat slower than that at the moment he attempted to turn around in the street. He denies that the impact threw the colored boy into the air. He states that the Ford skidded but the exact distance he could not say. At the time of actual impact, he was probably 25 feet east of the intersection or about 40 feet from the impact. On being questioned as to whether Thibodeau could have passed the motorbike to its left and avoid striking the motorbike, he makes the following clear and concise explanation:
"There was space to the left-hand side of the center line and to the left of the motorbike sufficiently wide for a car to pass thereover without striking the motorbike provided the motorbike did not cross over the center line to its left. The motorbike was zigzagging from left to right and at one time was apparently about to turn around in the middle of the street as it appeared to me. I do not know that the collision would have been avoided had the Thibodeaux car continued to go around the motorbike to the left because in that event I do not know what would have been the behavior of the motorbike. Certainly, if the motorbike had stayed on the right-hand side and the Thibodeaux car had gone over on the left-hand side to pass it there wouldn't have been a collision but when the Thibodeaux car started around the motorbike to the left the motorbike turned to its left as if to turn around in the middle of the street and then cut back to the right and then cut back to the left and it was impossible for me to determine, as I viewed it, just what the colored boy intended to do."
The testimony of Robert Thibodeau, Jr., the driver of the Ford, is substantially as follows: He was travelling west on Government Street at a rate of speed of about thirty-five miles per hour; he passed a truck driven by Mr. Friday within the block east of the intersection of Government and Sanders Streets; at that time, the motorbike was at about the intersection on the right-hand side. After passing the truck, he pulled over to the right and proceeded westward. When he had reached the intersection, and the motorbike had definitely passed the intersection, and while approaching the motorbike, he attempted to pass the motorbike. He states, "I pulled over to the left a little bit, and just when I was almost up on it, it looked like he decided to suddenly turn to the left, and he made a half turn. When he was half way through this turn, he saw me, and decided to turn back to the right. I had already decided to apply my brakes and cut back to my right too, and I struck him on the left-hand rear of his motorcycle", the right front portion of his car striking the motorcycle. He "stopped on the spot instantly". The motorbike operator did not give any signal whatever of his intention to make a left turn. He denies having waved at Miss McCardell or of having seen her at the scene of the accident. On cross-examination, he admits that there were signs at intervals along Government Street stating that the speed *Page 245 
limit was 25 miles per hour at the time of the accident. There were no on-coming vehicles on Government Street from the time that he passed the Friday truck to the time of the collision. He explains his inability to go to the left of the motorbike as it started its turn around in the street by stating that the motorbike occupied almost all of the left-hand side of the street. He states that his car was practically in the left lane of travel when the motorbike, which was about twenty-two feet ahead of him in its proper lane of travel, attempted to make the turn around. He states "and he decided abruptly to turn, without giving any warning whatsoever, and turned to the left and he crossed the center line and he came on the left-hand side", about nine-tenths of the motorbike being completely on the left-hand side. He skidded about eight or ten feet after applying his brakes. He denies that the driver of the motorbike was thrown in the air.
Thus it can readily be seen that the testimony of Mr. Friday and young Thibodeau, and somewhat corroborated by Mr. Wright is in accord that the accident occurred as the Ford was in the act of passing the motorbike when the motorbike suddenly attempted to make a left turn away from the intersection without ascertaining if any one was in the rear and about to pass, and without giving any warnings whatever, and when the driver of the motorbike, on account of the heavy traffic on that street, should have expected someone in his rear and about to pass him. If we understand the brief of the Companies correctly, they rely on only two acts of negligence in this court, viz: The exceeding of the speed limit and the violation of Rule 7 of Sec. 3 of the Highway Regulatory Act, namely, Act 286 of 1938.
In regard to exceeding the speed limit, it is proven that there were signs showing the speed limit to be 25 miles per hour and that Thibodeau was driving in excess of that limit by about ten miles per hour. However, we cannot see wherein the speed of Thibodeau enters into the case. The motorbike had passed the intersection and the Ford was about to pass the intersection. Young Thibodeau had the right to assume that the driver of the motorbike was not going to make a left turn. According to Mr. Wright's testimony, the motorbike got back to its right lane of travel in the intersection and picked up speed. The speed of the Ford cannot be said to have been a proximate cause of the accident. Under the conditions presented, it is our opinion that the accident would have happened even if the speed of the Ford had been 25 miles per hour.
With regard to the violation of Rule 7 of Section 3, requiring the driver of an overtaking vehicle to give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction, or Thibodeau's failure to blow the horn of his car, in view of the situation presented, the question that is suggested is whether the sounding of the horn was necessary and also whether it would have served to avoid the accident. The motorbike was, up to the moment of its sudden attempted turn, on its right hand side of the road, leaving the Ford the usual necessary space on its left to pass ahead of the motorbike. Had the motorbike operator given Thibodeau the least idea of his intention to make the turn, or had the motorbike obstructed the clearance of his lane of travel on the left in the least, it would then have been imperative for him to sound the horn of his car and indicate to the motorbike operator that he intended to overtake him.
In the case of De La Vergne v. Employers Liability Assur. Corp., Ltd., La.App., 4 So.2d 66, 69, we stated: "The purpose of the law in requiring the giving of an audible warning by the overtaking vehicle, as we view it, is to favor its driver to the extent that his normal progress on the highway will not be unnecessarily impeded by the driver of the car preceding him in not leaving or giving him sufficient clearance in which to pass ahead." There was nothing in the manner of the motorbike operator's driving up to the very moment the Ford car was in the act of passing the motorbike which indicated to Thibodeau that his lane of travel would not remain open on that side for him to pass ahead.
Under our appreciation of the facts in this case, considering the manner in which the accident occurred, neither Thibodeau's speed nor his failure to blow his horn contributed to it. If young Thibodeau was in any way negligent, his negligence was passive. The proximate cause of the accident in our opinion, was the negligence of the driver of the motorbike in attempting to turn around in the street, in a block, *Page 246 
without looking to see if the turn could be safely made and without signal or warning of any kind, at a time when it was impossible for young Thibodeau to avoid the collision. The judgments appealed from are correct and will be affirmed.