## THE UNION PACIFIC RAILWAY *v.* DONNELLAN.

TREASURER OF ALBANY COUNTY : DELINQUENT TAXES : FEES.—The treasurer of Albany county is not entitled to the percentum provided for in section 19, of the act of December 15th, 1877, entitled " An act to provide fees and salaries for the officers of Albany county, and for other purposes," except in cases where he enforces the collection of taxes by making demand upon delinquent taxpayers, levying distress upon property, and selling sufficient to pay the delinquent taxes and costs.

ASSESSMENT : SCHOOL DISTRICTS.—There must be an assessment by districts for district school purposes to sustain a district tax, and it must be a separate roll.

IDEM.—The assessment being the foundation for taxation, where that is wanting all else is a nullity.

IDEM.—The assessment for school district taxes must be made by the county assessor, and where the county assessor for Albany county for the year 1879, failed to make such assessment, the county clerk and county commissioners afterwards made it, *Held,* That they acted without authority of law, and that their acts were void, and that the tax could not be collected.

APPEAL from the District Court of Albany County.

The facts are stated in the opinion.

*W. W. Corlett,* for appellant.

No assessment of the property of the complainant in said school district was ever made for the year 1879. See Compiled Laws, page 527, sec. 7 ; Session Laws of 1878, page 117, secs. 1, 2, 3, 7 and 9.

The assessment is the foundation of the right to levy and collect taxes, and without an assessment there is no power to levy and collect taxes. *Thayer* v. *Stearns,* 1 Pickering, 482; *Miller* v. *Hale,* 26 Pa. St., 432; *People* v. *Hastings,* 29 Cal., 449; *Riley* v. *Lancaster,* 39 Cal., 354; *People* v. *Sargeant,* 44 Cal., 430; *Williams* v. *Corcoran,* 46 Cal., 553; *Morrill* v. *Taylor,* 6 Neb., 241–3.

And if no legal assessment is made the effect is the same

as if there was no assessment. *Levy* v. *Burnham*, 15 Mass., 144.

Whenever it is a constitutional requirement that taxation shall be according to value, an assessment by public officers is an indispensable prerequisite to the imposition of the tax. Cooley on Constitutional Limitations, page 495; Organic Act of Wyoming, sec. 6; Compiled Laws of Wyoming, page 534, secs. 52–3.

School districts are excessive in size and area, when the evident object and purpose in thus shaping them was to subject the complainant to an undue proportion of taxes for the support of district schools. Cooley on Taxation, pp. 67–8, 71–2, 104–6; *Bradshaw* v. *Omaha*, 1 Neb., 16; *Morford* v. *Unger*, 8 Iowa, 90; *Langworthy* v. *Dubuque*, 13 Iowa, 86; *Fulton* v. *Davenport*, 17 Iowa, 404; *Cheeney* v. *Hoover*, 9 B. Monroe, 330; *Wells* v. *Weston*, 22 Mo., 885; Cooley's Constitutional Limitations, chap. 14.

If part of a tax is legal and part is illegal, the whole is void, especially when the illegal part cannot be separated from the legal. *Hubbard* v. *Brainard*, 35 Conn., 563; *Society, &c.* v. *Hartford*, 38 Conn., 274; *Carey* v. *Stoneham*, 1 Allen, 319; *Stone* v. *Bean*, 15 Gray, 42; *Wells* v. *Burbank*, 17 New Hamp., 412; *Bucknell* v. *Storey*, 36 Cal., 72; *Case* v. *Dean*, 16 Mich., 30–2; *Clark* v. *Strockland*, 2 Curtis, 436; *Humper* v. *McLellan*, 19 Ohio, 308; Cooley on Taxation, 295–7.

"It is a universal rule in equity never to enforce either a penalty or a forfeiture." Story's Equity Jurisprudence, sec. 1319; *Livingston* v. *Tompkins*, 4 Johns Ch. R., 431; *Horsburg* v. *Baker*, 1 Peters R., 232–36; Story's Equity Pleadings, sec. 521.

The defendant, if he insists upon his penalty, must at least show that he did whatever was incumbent upon him to make such penalty due. It was his duty, at least twenty days before October 20th, 1879, to notify the complainant of the amount of its taxes and of the day when the same became delinquent, by postal card addressed to the tax-

payer, his or her agent or attorney.   (Laws of 1877, page 106, secs. 18 and 19.)

*M. C. Brown,* for appellee.

The bill alleges that the tax is illegal and void.   This of itself furnishes no ground of equitable jurisdiction on which relief in this court can be granted.   See High on Injunction, sec. 354; *Dows* v. *Chicago,* 11 Wal., 108; *Haywood* v. *Buffalo,* 14 New York, 534; *McPike* v. *Pew,* 48 Mo., 525; *Warden* v. *Supervisors,* 14 Wis., 618; Cooley on Tax., page 536; State Railroad Tax Cases, 92 U. S., 612.

Nor will equity interfere to restrain the enforcement of tax proceedings, on the ground of irregularities or errors in the assessment of the tax, or in the execution of the powers conferred upon taxing officers.   The remedy is at law.   High on Injunctions, sec. 355; Clinton, etc. Appeal, 56 Pa. St., 325; *O'Neal* v. *Virginia, etc.,* 18 Md., 1; *Macklot* v. *Davenport,* 17 Iowa, 379; *Center, etc. Co.* v. *Black,* 32 Ind., 468; *Exchange, etc.* v. *Hines,* 3 Ohio St., 1; *Jackson* v. *Dewit,* 10 Mich., 248; *Green* v. *Mumford,* 5 R. I., 472; *Chicago* v. *Frary,* 22 Ill., 34; Cooley on Taxation, pp. 540–541; and authorities there cited.

Non-compliance with some particular direction of a statute is not a ground for equitable interference.   *Mills* v. *Gleason,* 11 Wis., 470; High on Injunctions, sec. 356.

In no case will the collection of a tax be enjoined unless irreparable injury is made to appear.   High on Injunctions, sec. 362; *Ritter* v. *Patch,* 12 Cal., 298; Cooley on Tax., pp. 538–39; *Thompson* v. *Pacific R. R.,* 9 Wall, 462.

When it is clearly shown by a bill in equity, that numerous and expensive suits at law must follow, in order that complainant may obtain his rights, relief may be granted by a court of equity.   High on Injunctions, sec. 9.   But in this case a multiplicity of suits at law is impossible.

The statement of the bill is that the defendant is about to levy on personal property.   A court never interferes to

restrain the collection of an illegal tax on personal property, because it is a mere trespass, and the remedy at law is ample unless the property has some peculiar value to the owner beyond any possible market value, and in like cases. See Cooley on Taxation, pp. 538 and 539, and authorities there cited; High on Injunctions, sec. 366; *Dean* v. *Todd*, 22 Mo., 90; 24 Id., 20; *Van Cott* v. *Supervisors*, 18 Wis., 247; Dillon Municipal Corporations bal. 2, page 839, sec. 838; *Peck* v. *Fox Lake*, 28 Wis., 583; *Dodd* v. *Hartford*, 55 Conn., 232.

This bill of complainant shows that it should legally pay some portion of the school tax against which it complains; yet the bill does not aver that the legal cannot be separated from the illegal, nor does it offer to pay the legal proportion thereof, and is therefore bad. High on Injunctions, sec. 336; *Palmer* v. *Napoleon*, 16 Mich., 176; *Taylor* v. *Thompson*, 42 Ill., 10; *Mills* v. *Johnson*, 17 Wis., 598; 16 Wis., 185; *Commissioners* v. *Elston*, 32 Ind., 27; State Railroad Tax Cases, 22 U. S., 616.

Assent to the levy of a tax, or standing by and failing to avail himself of the remedy provided by law, is estopped in equity. *Kellogg* v. *Ely*, 15 Ohio St., 64; *Jackson* v. *Detroit*, 10 Mich., 248; *Weber* v. *San Francisco*, 1 Cal., 455; High on Injunctions, 364.

Our statutes provide a remedy for unlawful taxation. See Compiled Laws, page 557, sec. 29; page 563, sec. 43; and page 559, sec. 37.

One averment of the bill of complaint upon which relief is asked is that the collector claims ten per cent. addition to taxes not paid before October 20. The statute expressly provides for such addition. See Session Laws Wyoming, 1867, page    , sec.  .

Statutes authorizing such penalties are held valid and constitutional. See *Lacey* v. *Davis*, 4 Mich., 140; *Scott* v. *Watkins*, 22 Ark., 556; *High* v. *Shoemaker*, 22 Cal., 363; *People* v. *Todd*, 23 Id., 181; *Mulligan* v. *Heutrager*, 18 Ia., 171; *Butler* v. *Bailey*, 2 Ba., 244.

SENER, C. J.   This was a suit in chancery brought in said district court in November, 1879, to restrain the defendant from collecting from the complainant a certain school tax claimed to be due from the complainant for the year 1879, to School District Number One, in Albany county, and a certain other sum claimed to be due from complainant to said defendant as a penalty due on the entire taxes of complainant (territorial, county and school district,) for the same year.   The complainant's ground of action and relief appear in its bill of complaint, amendment thereto and supplemental bill.

The school tax thus claimed from complainant, and the payment of which it resists, amounts to $2,497.44, according to complainant, and $2,641.44 according to the defendant, and is alleged to be illegal and unauthorized for the following reasons:

1. Because no assessment was made of complainant's property in said school district for the year 1879, and no lawful extension of the school tax made upon the tax list for that year against complainant's property in said district.

2. Because said school district was on the 10th day of May, 1878, without warrant of law, and fraudulently as to complainant, extended and increased for the purpose of compelling the complainants to pay an unjust portion of the school district taxes in the district.

The penalty claimed from complainant was $2,048.33, as alleged by the complainant, or the sum of $2,190.72, as alleged by the defendant.   The complainant alleges that while it is true that it did not pay or tender its taxes in Albany county for the year 1879, until after they had become delinquent, yet that it did make such tender of payment of all that was justly due within a day or two thereafter, and that when such tender was made no steps had been taken to enforce the collection, and that, therefore, under the terms of the law itself, the penalty could not be exacted, and that even if by the terms of the law itself such penalty could be exacted, still the law creating such exaction was void and without the legislative power.

After the filing of the bill of complaint, the complainant paid to the defendant on account of the taxes claimed in Albany county for the year 1879, the sum of $18,849.88, said amount being all its taxes admitted to be due from it in said county for the year 1879; and being, in fact, all the taxes due, except said school district tax as set out on the tax list, ($2,547.77,) and a certain other sum of $509.55, appearing on the tax list as a demand for a tax, but not appearing on said list to be a school tax.

The answer of the defendant, denies that said district was formed for the purpose stated in the bill, but was formed it is claimed, for the purpose of establishing other schools than those in Laramie City, and to establish at the latter place a high school. Said answer further alleges that the property assessed to the complainant in 1879, was $880,481, instead of $832,481; admits that no assessment roll was returned of the property in said school district for 1879, but alleges that the assessor did that which was equivalent, to wit: that on the county assessment roll he carried the name of the school district and the valuation of each party's property against his name, so that said county assessment substantially served the double purpose of a county assessment roll, and a school district assessment roll at the same time. The answer further alleges that a tax of $2\frac{1}{2}$ mills on the dollar was extended on the tax list of Albany county for 1879, against complainant's property, as assessed for payment of the bonds of the district, and one-half of a mill to make the tax voted by the district for that year, and that the school district tax on the tax list, against complainant, was $2,641.44, and that at the time defendant was restrained he was about to levy on the defendant's property to make the taxes claimed, and also to make the sum of $2,190.72, as a penalty. The answer further denies tender of the payment of all taxes due on October 22, 1879, except said school district tax, but alleges that on October 27, 1879, complainant tendered $24,401.33, in payment of all taxes

for the year, which it is alleged was $505.87 less than the proper amount; but it is admitted that said tender was refused because of the refusal to tender said further sum of $505.87, and the $2,190.72, claimed as a penalty as aforesaid, and because as it alleges a receipt in full was required. The answer further alleges that one McMurray, an agent of the complainant, made complaint to the commissioners that the tax was erroneous, as claimed from complainant, in that it embraced property in another school district; that such claim was allowed and rebate given to correct the error. The answer denies that the defendant failed or neglected to give the notice, as required by law, when the taxes of complainant would become delinquent, and avers that when restrained he was about to enforce the payment of said taxes. The answer further sets forth what the assessed valuation of complainant's property would be, or was, in said school district before its enlargement in 1879, and what the school district tax would have been, or was, before such enlargement, and that such sum should be paid before granting the complainant any relief.

To this answer the complainant filed a general replication.

A temporary injunction was granted pending the suit, and in the meantime the case was referred to a master, who took the testimony and reported the same, and on December 16, 1880, a decree was entered that complainant paid to defendant the sum of $1,884.98, as his costs and fees as collector of taxes, being the ten per centum penalty on $18,849.85, (the amount of taxes which the court found were lawfully due and collectable,) and in case of failure to pay said sum, within five days, the bill of complaint should be dismissed, and in case said sum was paid as decreed, then the said school district tax should be adjudged void, and perpetually enjoined. The appeal was regularly taken and is here to be disposed of. The pleadings show curiously enough that the court below proceeded to dispose of this case without making the substantial party in interest,

to wit: the school board, No. 1, in the county of Albany, a party defendant there.   The only party enjoined, or rather made a party there and here, being the treasurer of Albany county; so that it appears that the rights of school district No. 1, were heard and disposed of without its having had any day in court so as to be bound by any decree rendered therein.

We are clearly of the opinion that John W. Donnellan was not entitled to any per centum not penalty, (see chapter 38, Session Laws of 1879, section 1, page 89, and read it in connection with section 19 and 20 of an act to provide fees and salaries for the officers of Albany county, and for other purposes, approved December 15, 1877.)   These two chapters and sections plainly show that it was the purpose to attach this as a per centum compensation for the treasurer of Albany county for his services in enforcing the collection of taxes, which enforcement was to consist of making a demand upon tax payers, levying distress upon property, real and personal, of delinquent tax payers, and selling sufficient to pay delinquent taxes and costs.   It was a per centum for doing this, not a mere attachment and penalty for doing nothing.   This the treasurer of Albany county was to do by proceeding at once after October 20th in each year: but this the said treasurer as collector didn't do.   He was enjoined by Judge Blair, or temporarily restrained on November 1st, 1879, and only made his demand as shown by the marginal note on the tax list on the 3d of November, 1879, in disobedience of the temporary restraining order, and has never done aught else save to defend this suit to recover his penalty or per centum, and to give his testimony as the record shows.   But in any event the right to collect and to distrain must depend, in our opinion, upon an assessment.   Now an assessment for school purposes by school district in addition to the two mills provided by section 51, chapter 103, of the Compiled Laws, page 534, is specifically provided for by the Wyoming Compiled Laws, page 534, sections 52 to 55 inclusive, chapter 103, which reads as follows:

SEC. 52.   Whenever a sum of money has been voted by a district, the clerk shall, under the supervision of the director, make out and certify, over his official signature, the amount of money voted in his district, and on or before the first Monday of June in each year, cause the same to be filed in the office of the clerk of the board of county commissioners.   The clerk shall also, at the same time, notify the county assessor, in writing, of the action of the district meeting.   The county assessor shall, at the time of making the county assessment, also assess the property of each district from which he has received notification as aforesaid, and return to the county clerk, at the time of returning the county assessment roll, a separate roll of each district by him assessed, for which services he shall receive five dollars per day for the time actually employed in making such assessment, which sum shall be paid out of the treasury of each district so assessed.

SEC. 53.   It shall be the duty of the board of county commissioners to see that the amount of money so voted, be extended by the clerk against the property of the district, in making out the annual tax list, and that sufficient tax be levied upon the property of such district, returned by the county assessor, to make said sum.

SEC. 54.   The taxes and assessments of all school districts for all purposes, except as otherwise specially provided by law, shall, be collected like county taxes, and all delinquent taxes shall be returned by the collector in the same manner as other delinquent taxes are required by law to be returned.

SEC. 55.   The amount of tax collected by the county collector shall be paid over to the county treasurer like other taxes, and shall be held by said county treasurer subject to the draft of the county superintendent, and shall be paid over accordingly;  *Provided,* That the money collected on the district tax rolls shall be paid by the collector directly to the treasurer of the proper district, and take his receipt therefor.

The testimony of I. P. Caldwell, the then county assessor, shows that no assessment was made by him for school district No. 1, and whilst there is a certificate from the county clerk made in August, 1879, shows that a district assessment was required so far as the records of that office show, as he certifies, which at best is a mere conclusion of the clerk's, he should have given the certificate from the school meeting itself. It does not appear that the vote was made requiring the levy, or the county commissioners notified before the first Monday in June of that year as the law required, nor is it shown that Caldwell, the county assessor, was ever notified, and as he was on the witness stand and this testimony was very material and no attempt to prove it either by record evidence or Caldwell's own evidence, we are forced to the conclusion upon the facts, that no such notification in writing to Caldwell, the county assessor, was ever given; and therefore it was that Caldwell made no assessment and attempted to make none by means of a separate roll.

This being true the subsequent acts of the county commissioners and county clerk are, in our opinion, of no validity. The appellee has insisted that there is no jurisdiction in equity to enjoin and so to dispose of this case, and yet in every authority cited by him, where power to enjoin was denied, there was an assessment or an attempted assessment by an authorized assessor. Here there was none. Nor can we find a case like the present. Cooley on Taxation, *vide*, ed. 1879, sec. 259, lays it down that without assessments taxes have no support and are nullities (citing a number of authorities). And again, page 53, says when any remedy is allowed in equity, it is by injunction. It is true that most of the cases cited by Cooley as well as by counsel in argument here, grew out of attempts to sustain tax titles, where the defects consist mainly of there having been no assessment. But we think that similar reasoning will hold good here, because our statute says, there must be an assessment by districts for district school purposes to

sustain a district tax, and it must be a separate roll.   That it is not so separate in this case, we think fatal and insufferable.   As the supreme court of Massachusetts say in *Thayer* v. *Stearns*, 1 Pick, 423, " We think it clear the legislature intended that they (the taxes) should be separately assessed."   (This was where there had been an attempt at assessing by the proper assessing officer, here there has been none).   This provision would not have been necessary if they might have been assessed together, and it is never lawful in the construction of statutes to impute useless or frivolous conduct to the legislature; the object undoubtedly was to enable the citizen to scrutinize with more facility his taxes, that he might the better exercise his judgment as to their fairness and legality.   The supreme court of Illinois in 98 of their Reports, page 102, says, " A court of equity ever takes jurisdiction to afford relief against the collection of taxes * * * * * where a tax has been imposed by a person not empowered to levy it, which means to enforce the tax : here the assessment being the foundation, and being wanting, all else is a nullity.

The levying of a tax we take it means, *vide* Webster, " to collect by assessment."   Here the assessment was wanting. Whatever may constitute assessment elsewhere, by our law it is and must be done as to school districts by the assessor, as hereinbefore shown.

But our law distinctly provides for a separate roll for each district assessed.   Now an assessment according to legal intendment is " A valuation made by authorized persons according to their discretion.   It is a valuation of the property of those who are to pay the tax, for the purpose of fixing the proportion which each man must pay."   This was not done, nor attempted to be done for the year 1879, by the county assessor, the sworn officer of the law for that purpose for Albany county, and *ex officio* for that district; the records and his sworn testimony alike show it.

There has been a good deal of argument about the right of the district to change the boundaries, by which they were

increased some seventy-five miles. To our view of this case, it is not necessary to consider this question. There was no assessment either for the old district or for the new one for that year, hence it is not material to consider this proposition. But must this tax be lost? Undoubtedly, unless it was assessed.

We think with the supreme court of Massachusetts in *Libbe* v. *Burnham*, 15 Mass., 147, "that strictness in these particulars is wholesome discipline;" this was a tax case where the assessors had exceeded their duty, and the court set their action aside. In 35 Mississippi 423, *Showalter* v. *Brown*, this ground was taken. There it was a case tried at law to recover a tax collected without an assessment. Here it must be remembered too, that this is not the regular county or territorial tax, but only a district school tax. And the supreme court of the United States hold in the tax cases, 92 U. S., that the control of the courts over private property is more necessary than when affecting revenue.

But the counsel of Donnellan gravely present two acts of the railway company as estopping their denying the validity of this tax, and by consequence the penalty, or rather the per centum.

I. That McMurray, the tax agent of the railway company, appeared before the Board of County Commissioners in October, 1879, and after having examined the tax list, obtained a rebate and expressed himself as satisfied.

First premising that estoppels are odious in law, 1 Serg. & Rawle, 444; and secondly, not admitted in equity against the truth, id. 442, let us answer, that McMurray only bound himself to abide for his company the taxes legally assessed. To do more was beyond the scope of his authority. We have shown the district school tax was not assessed at all by any party authorized to assess, nor was there any legal assessment. The County Commissioners had no authority to act as assessors in the first place, so far as the district school tax was concerned; nor had the county clerk, as he attempted unlawfully to do, their authority was to deal

and do with assessments made by the assessor, *vide* the itali-cized words in the following clause of sec. 28, Ch. 109, of Compiled Laws of Wyoming, page 558.

SEC. 28. The board of county commissioners of each county, shall constitute a board for the equalization of the assessment of the several persons in the county, substan-tially in the same manner as is required by the territorial board of equalization, to equalize among the several coun-ties of the Territory as near as may be, and they shall hold a special meeting at the office of the county clerk, at the county seat, within five days after return of the assessment roll in each year, and shall have the right to adjourn such meeting from day to day for not more than *ten days*, and at such meeting they *shall add to said assess-ment any taxable property in the county not included in the assessment as returned by the assessor, and shall assess the value thereof, and shall hear and determine the complaint of all persons feeling aggrieved by the assessment of their prop-erty as returned by the assessor, and, for the purpose of equal-izing the assessment roll, may increase, diminish, or otherwise alter and correct, any assessment.*

They did not pretend then to add to the railway company tax list any taxable property not included in the assessment, but they did undertake to make the district school No. 1 assessment for the first time, and to blend it with the gen-eral county tax, the very thing the law said must not be done, or at least must be done separately; and the county clerk, who it seems had been a railroad employé, an engineer, undertook as his testimony shows, to do it of his own general personal knowledge, and not from a separate assessment roll returned by the assessor. This was clearly illegal and no assessment at all. The blending was as fatal as the original failure of the assessor separately to assess.

II. That the railway paid taxes in 1878 for the district as enlarged, and so sought to pay for 1879 as enlarged. We decline to consider the question of the enlargement or attempted enlargement of district No. 1, for school tax pur-

poses, whereby it was enlarged from twelve to seventy-five miles, merely observing that if it was wrong in 1878, that would neither bind a corporation or court of equity to adhere to it without other reason than that it had been so done before.

As to the item of $509.55, returned in blank on the tax list for 1879, we cannot see how this can or ought in equity and fairness to be allowed. It ought to be specific in stating what it is for. This is required by sec. 33, of chap. 109, of the Compiled Laws of Wyoming, which is as follows:

SEC. 33. On the fourth Monday in August in each year, the board of county commissioners shall, by an order to be entered of record among their proceedings, levy the requisite taxes for the year, and the same may be levied at any time prior to the fourth Monday in August, if the statement and notice required by section thirty-two of this act has been received from the auditor. Immediately after the taxes are levied, the county clerk shall make out a tax list in tabular form, and in alphabetical order, having distinct columns for lands, and for town lots, and their value, and for the value of personal and other property, and for carrying out, in a column by itself, the amount of each different tax, and having one or more columns for delinquent taxes. Such list may be in the following form:

| Owner's Name. | Part of section. | Section. | Township. | Range. | Acres. | Name of Town. | Lots. | Block. | Value of. | Real Estate. | Value of. | Personal and other property. | Poll Tax. | Territorial. | County Tax. | Poor and Paupers. | Roads and Bridges. | District Court. | School Tax. | Delinquent. | Delinquent. | Remarks. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Prs'ty | | | | | | | | | | | | | 50 | 500 | 200 | 200 | 400 | 100 | | | |
| | N.e.¼ | 6 | 7 | 5 | 160 | | | | | | | 100 | | 150 | 1500 | 600 | 200 | 1200 | 300 | | | |
| | W.½ | 8 | 6 | 4 | 80 | | | | | | 100 | | | 50 | 500 | 200 | 600 | 400 | 100 | | | |
| | N.e.¼ | | | | | | | | | | | | | 100 | 1000 | 400 | 200 | 800 | 200 | | | |

This is not done, but Donnellan in his testimony says, it was the amount levied to meet the contingent school expenses for that year for district No. 1. As the whole of this is unauthorized, because no assessment was made, this item can be no exception to the rest of the attempted tax. The whole amount of taxes appearing on the tax list of 1879, against the U. P. Railway is $21,906.20. There is an error even in their own addition of $1, so, instead of $21,906.20, making say $21,906.20, they have paid as a condition precedent for bringing this suit,...................$18,849.88

Add the school tax erroneously included, as stated in complainant's bill, and admitted in the answer of defendant to be $2,641.44....... 2,497.44

And this sum put on the tax list, but for what, not appearing, and so disallowed....... 509.55

as against the $21,906.20, claimed, but if the defendant's statement of the school tax is to be taken as correct, the railway has overpaid; if its own statement, it has underpaid; but in any event it made a tender in the U. S. legal tender of $20,483.30, more than enough to pay to Meldrum, who was acting for Donnellan, he being absent from the Territory.

As far as Mills' testimony goes, this was an unconditional tender. The defendant in his answer says it was conditional. Mills does not say so, and Donnellan in stating what Meldrum said confirms Mills, and shows that he not only offered the legal tender but $918.03, in county warrants, but Donnellan wanted his ten per cent. and so refused to accept the taxes.

Our conclusion is that the decrees entered in the court below on the 16th and 24th of December, 1880, be and the same are hereby reversed and annulled, and this cause be remanded to the district court in and for Albany county, with instructions to make the school district No. 1, in the county of Albany, by its director a defendant thereto, with a rule upon said board to show cause, if any it can, why it, its agents, attornies, and all other persons, should not be per-

petually enjoined and restrained from collecting or attempting to collect anything for or on account of the district school tax in district No. 1, in Albany county, for the year 1879, on the alleged assessment as shown by the record in this case, and hereinbefore declared to be null and void. (As the defendant's statement in his answer admits a sum assessed for the school tax for district No. 1, in Albany county, sufficient to show that the railway overpaid what is due by it on account of its taxes for 1879, we will take that as correct for all the purposes of this case.) That John W. Donnellan, county treasurer of Albany county, and his successors in office, and all other persons, be forever enjoined from collecting, or in any manner asserting any claim to, any percentum against the said U. P. Railway Company, either at law or in equity, on account of the alleged failure of said company to pay their taxes on or before October 20th, 1879; the appellant to have costs taxed and allowed in both courts.

Decree reversed.