JULIUS P. FINK,

*Plaintiff and Appellant,*

vs.

ROBERT LEWARK; BERT LEWARK,

*Defendants and Respondents.*

(No. 2545; July 22nd, 1952; 246 Pac. (2d) 195)

For the plaintiff and appellant the cause was submitted upon the brief of Robert N. Chaffin and Joseph F. Maier, both of Torrington, Wyoming.

For the defendants and respondents the cause was submitted upon the brief of John L. Sawyer and George P. Sawyer of Torrington, Wyoming.

## OPINION

RINER, Justice.

This is an appeal from the District Court of Goshen County questioning the judgment of that court in favor of Robert Lewark, one of the defendants below, and against Julius P. Fink, the plaintiff in that court; here the latter appears as the appellant and the defendants aforesaid as respondents. We shall usually refer to the parties as they were named in said district court, viz. plaintiff and defendants respectively.

The facts appearing in the record submitted are in substance as follows:

Plaintiff was driving a late model automobile northerly on U.S. highway 85 at a speed, according to plaintiff's testimony, between 50 and 60 miles per hour on September 3rd 1951, at about the hour of 4:15 p.m. The weather was clear and fair. Visibility accordingly was excellent. There was no other traffic at the time on this portion of the highway other than a truck with a beet box on it behind the cab thereof. This truck was travel-

ing at that time at a speed of about 30 miles per hour. At this point on the highway there was a distinctive broken yellow line which indicated the center of the road. As the automobile drew near the truck this center line was supplemented with a solid yellow line which on the latter's easterly side continued on some distance northerly and paralleling the broken center line of the highway and about two inches away from it. This combination of yellow lines referring especially to the solid line, said the highway patrolman—called as a witness for plaintiff, and who arrived at the scene of the accident shortly after it happened, indicated that: "Well, when a man is traveling north, the line is on his side—we will say here on the east side of the road he is not supposed to pass."

On the westerly side of this highway with roads leading to them were located an approach to a mill or elevator and also a war surplus clothing store. These buildings were located several hundred feet from the westerly side of the highway.

As the truck driven by defendant's agent, Bert Lewark, came to a point about opposite the elevator or mill aforesaid without giving any signal by the driver indicating his intention so to do it turned to the left evidently intending to go to one or the other of the two buildings mentioned above he crossed the double line to the left side of the highway. As he did so the driver of the automobile, plaintiff below, likewise without giving any warning signal of any kind whatsoever indicating his intention to pass commenced to turn his automobile also to the left side of the road and, according to the patrolman aforesaid, struck the truck on its left front wheel and both the car and the truck incurred damage. The damage to the automobile was the most extensive. Fortunately no one was injured.

The impact of the two vehicles took place about 1½ feet from the center of the highway where the two lines were and 22 feet north of the southerly end of the solid yellow line and on the west or wrong side of the highway from the viewpoint of both drivers, having in mind their course of previous driving on the right side of the road as they approached the point where they first started to turn into the left highway lane. It was 107 feet from the place where the two vehicles struck each other to the place where the automobile came to a stop with its front wheels resting against a railroad embankment which ran along in that vicinity. The front wheels of plaintiff's car made deep dents in that embankment before stopping, even after striking defendant's truck on its front wheel as stated above. The embankment was about 2½ feet high. The truck moved only a few feet after being struck. These statements are taken from the testimony of the patrolman as he stated he took measurements. Apparently the other witnesses did not and their testimony is, in some respects, conflicting with that of the officer.

The plaintiff testified that as he started to pass the truck he slowed his automobile from 50 or 60 miles an hour to about 30 miles an hour, but there would appear to be some doubt on this point in view of the testimony of the officer briefly outlined above. We may recall just here, also, that this court in Grantham vs. Union Pacific Coal Co., Wyoming, 239 P. (2nd) 220, 224, has held that:

" 'The rule prohibiting the review of findings based on conflicting evidence applies where the conflict is between witnesses for the same party as well as between witnesses for the respective parties.' "

The defendants introduced no evidence in the case but counsel made and presented to the court the following motion:

"Comes now the defendant Bert Lewark and moves the Court for nonsuit of the plaintiff's alleged cause of action for the insufficiency of the plaintiff's proof in the following particulars: First, plaintiff has failed to prove any negligence on the part of the defendant Bert Lewark or that any negligence of the defendant Bert Lewark in any way caused or proximately contributed to plaintiff's damage; second, the plaintiff's proof affirmatively shows that any injury suffered by plaintiff was proximately caused or contributed to by the plaintiff's own negligence."

A similar separate motion was made in behalf of the defendant Robert Lewark with the additional ground that "the plaintiff has failed to prove any agency or any basis for holding the defendant Robert Lewark liable in this action."

The court reluctantly disposed of the litigation at the end of plaintiff's case with a judgment which after recital of the appearance of counsel and that the evidence of plaintiff had been introduced and closed reads as follows:

"* * * the Defendant, Robert Lewark, by his attorneys, moved said Court to enter a judgment of nonsuit in said action, on the ground upon the trial the Plaintiff had failed to prove a sufficient case and stating the respects in which said Plaintiff had failed to make such proof, which grounds were specified in said Motion. Thereafter upon motion of said counsel said Court decided to and did grant said Motion for nonsuit as to the Defendant, Robert Lewark and ordered that judgment be entered accordingly.

"WHEREFORE IT IS ORDERED AND ADJUDGED that judgment of nonsuit be and is hereby entered in favor of the Defendant, Robert Lewark and against the Plaintiff, Julius P. Fink, on the ground that upon said trial the Plaintiff has failed to prove a sufficient case for the Court against this Defendant.

"IT IS HEREBY FURTHER ORDERED AND ADJUDGED that the action be dismissed and that De-

fendant recover of the Plaintiff, costs of suit amounting to the sum of $............"

This appeal ensued.

The statutory provisions involved in this matter appear to be these: Concerning the motions for nonsuit it should be recalled that section 3-3505 W.C.S. 1945, p. 342 provides:

"An action may be dismissed without prejudice to a future action:

"1. By the plaintiff, before the final submission of the cause to the jury, or to the court, when the trial is by the court;

"2. By the court, where the plaintiff fails to appear on the trial;

"3. By the court for the want of necessary parties;

"4. By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence;

"5. By the court for disobedience by the plaintiff of an order concerning the proceedings in the action;

"6. By the plaintiff, in vacation, on payment of costs; and the clerk, in such case, shall forthwith make an entry thereof on the journal, whereupon the dismissal shall take effect; but this clause shall not apply to a petition in error, or a case in which a counter-claim or set-off has been filed.

"In all other cases the decision must be upon the merits, upon the trial of the action."

This section is substantially a rescript taken from the Ohio Code of Civil Procedure as it now appears (Page's Ohio Code, § 11586).

In territorial days in Wyoming and in early times in Ohio the first paragraph of subdivision (6) was omitted and the last paragraph of said subdivision (6) was appended to subdivision (5), of the Statute. This is seen

upon examination of the opinion of Chief Justice Sener in Mulhern vs. Union Pacific Railroad Company, 2 Wyo. 465; in that opinion the right of the District Court of Wyoming Territory to enter a peremptory nonsuit against the will of the plaintiff was considered and a negative ruling was announced on behalf of the Supreme Court of Wyoming Territory. This ruling was later followed and approved in our decision in Bader vs. Mills & Baker Co., 28 Wyo. 191, 201 Pac. 1012. Judge Sener, in the Mulhern case, pointed out (on page 472 of 2 Wyoming) after quoting the Statute as it stood before the court in that case that:

"It will not be claimed that there was any decision upon the merits, and as one will readily see at a glance, the nonsuit entered was not allowed as provided for in any of the subdivisions quoted."

In the course of Judge Sener's opinion aforesaid he notes (p. 476) that:

"Our code of Civil Procedure is taken from Ohio. In that state the decisions have been conflicting, but the latest rendered, that in the 11 of Ohio, Byrd v. Blessing comes nearer to our idea of a true interpretation. Our code is an exact reprint of the Ohio code on the subject of *nonsuits*." (Italics supplied by Court.)

It is evident that the district court of Goshen County was without authority to order a nonsuit. However, in the case of Byrd v. Blessing, 11 Ohio St. 362, 365, referred to in the opinion last above mentioned we find this language used:

"But it does not necessarily follow that the judgment of the court of common pleas should be reversed by reason of such error in so entering such judgment of nonsuit. If the record shows that the plaintiff was not thereby prejudiced, the maxim that the law never requires a vain thing, would here have its application, and prevent a reversal.

"Does the record, then, show that the plaintiff was not prejudiced by such dismissal of his action by the court? If it is evident that the judgment to have been rendered upon the merits, if the case had not been withdrawn from the jury, must have necessarily been for the defendants, and against the plaintiff, then it is evident the plaintiff has not been prejudiced by the judgment of non-suit; but if otherwise, then it follows that the plaintiff may have been prejudiced, and for the error so appearing upon the record, the plaintiff is entitled to have the judgment reversed, and to be restored to what he has thereby lost."

It is evident that the district court of Goshen County considered and disposed of the case at bar on its merits. While a motion for nonsuit was made yet that motion could be and probably was treated by the court as a motion to dismiss the action and a judgment of dismissal was, indeed, entered. It would seem that the nonsuit portion of the judgment could be disregarded as surplusage if the defendants were entitled to have that done, the plaintiff being in no wise injured by the granting of a judgment of nonsuit against him under the circumstances presented.

An examination of the record of appeal discloses that the court finds here on sufficient evidence that plaintiff's negligence was the proximate and producing cause of the accident.

This phase of the case we will now consider. The Statutes of this State involved—all in Wyoming Compiled Statutes 1945—on this point would appear to be these: the material portion of section 60-505 in its paragraph (b) and subdivision 3 thereof uses this language:

"No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions: * * * "3. Where official signs are in place directing that traf-

fic keep to the right, or a distinctive center line is marked, which distinctive line so directs traffic."

The material portion of § 60-506 of the statutory compilation aforesaid reads:

"And whenever any person traveling in any vehicle or conveyance on any public roads or highway shall overtake another vehicle or conveyance traveling in the same direction, and *shall by sound or call,* indicate to the driver thereof, a desire to pass, it shall be the duty of the driver of the vehicle or conveyance in front, if the nature and condition of the ground and of his load will permit, to turn promptly to the right of the center of the road, and the driver of the vehicle or conveyance behind shall then turn to the left of the center of the road and pass without interfering or interrupting, and the driver of the vehicle or conveyance passing, shall not return the vehicle to the center of the road until at least fifty (50) feet ahead of the vehicle or conveyance passed." (Italics supplied.)

It will be observed that the quoted part of § 60-506 expressly and explicitly deals with the duties encumbent upon motorists when overtaking and passing another automobile.

The first paragraph of § 60-507 of said compilation reads:

"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

The last sentence of § 60-609 of said compilation directs that:

"The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway."

There is no proof in this case either that the defendant's driver, Bert Lewark, knew that plaintiff's auto-

mobile was following the truck or that plaintiff by his horn or otherwise signalled the truck that the plaintiff desired to pass. Indeed the record is clear that no signal of any kind was given by the driver of the automobile.

There is testimony also by the plaintiff that when the truck was about opposite the war surplus clothing store the plaintiff was 200 feet behind it when he first noticed the truck. The proprietor of the store said he looked out of his store and saw plaintiff's automobile "trying to overtake the truck" and that he, the store proprietor, would say that when the automobile was even with the store the driver of the car was preparing to pass the truck and that a distance of not more than four or five feet separated the truck and the automobile. The highway patrolman also testified that the automobile driver (plaintiff) told him after the accident that "if I had turned a little sharper to the left I would have avoided the collision."

2 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.) section 938, pages 131 through 134 states these rules:

"An automobilist approaching a vehicle from the rear must exercise such care as a man of ordinary care and prudence would use under similar circumstances to give and communicate warning of his approach to the driver of a vehicle in advance.

"It is ordinarily provided by statute that the overtaking driver must give proper warnings, such as a signal with bell or horn, before undertaking to pass the other. "Statutes of this type are ordinarily held to be for the purpose of affording the overtaking vehicle a clear passage to the left of the overtaken vehicle and to warn the latter so that he will not turn into the lane occupied by the vehicle attempting to pass. * * *

"Under such statutes or ordinances as they are usually framed, the duty of the driver in front to go to the right

arises only on notice from the driver of the rear vehicle, if the driver of the front vehicle is not otherwise apprised of the approach of the rear vehicle, and the driver in advance is not bound at his peril to know that the driver in the rear desires to pass." (Citing many cases.)

60 C.J.S. section 326, page 760, subdivision (c) in part uses this language:

"Ordinarily the operator of the overtaking car should signal, by horn or other audible means, to the driver ahead his desire to pass, when ordinary care and prudence require such a warning, even in the absence of any statute to that effect. Where a governmental regulation provides for a signal or warning of intention to pass, such a signal or warning must be given in the manner provided for, and the failure to comply with such a regulation has been held, in itself, to constitute negligence or negligence per se; * * *"

5 Am. Jur. section 282 page 658 declares that:

"The driver of the car ahead, even the driver of a slow-moving vehicle, is not bound to know at his peril that an automobile is desirous of passing. Even a statute requiring one operating a vehicle on a highway to turn to the right to give an overtaking vehicle free passage on the left does not require him to keep a lookout for vehicles approaching from the rear under penalty of being held liable for injuries resulting from failure to give them room for passage. Knowledge of the desire to pass must be brought home to him, and then he must turn to the right as soon as practicable."

Volumes 3 and 4 Huddy's Cyclopedia of Automobile Law (9th Ed.) section 122, page 199 states the rule:

"When a rear vehicle wishes to pass a forward one, it is proper that some signal be given of such intention in order that the forward driver may be prepared to surrender a part of the road. A signal is usually required by statute in such a case, but even when not so required, the omission of a signal may be negligence."

60 C.J.S. page 744, section 322 confirms the rule thus:

"Unless the driver has been made aware, by signal or otherwise, of the presence of a vehicle in his rear or is in a situation where he is bound to anticipate the presence of other vehicles behind him, it has been held that he has the right to assume either that there is no other vehicle in close proximity in his rear or that any such vehicle is under such control as not to interfere with his free use of the road in front of and to the side of him in any lawful manner, and may therefore proceed at such speed as he chooses, use whatever portion of the highway he prefers, pass or not pass vehicles in front of him, or stop or start at will, and even turn into side roads, without the giving of signals of such intentions."

In Kerlinske v. Etzel, 194 Wis. 36, 215 N.W. 591, 592, even where it appeared there was no statute such as our section 60-506 supra, the appellate court in reversing a judgment for the plaintiff and remanding the cause with instructions to dismiss the action the Supreme Court of Wisconsin very forcibly said:

"To be sure there is no statutory law requiring one driving a motor vehicle on the highway to give warning of an intention to pass another vehicle. Neither is there any law requiring the driver of the vehicle ahead to give warning of an intention to turn to the left.

"No doubt a warning given by either of the parties to this case would have avoided this accident. Plainly, there is more reason for placing the responsibility for an accident such as this upon the person who intends to pass. He is in the rear and can see what is ahead. He knows that upon his giving the warning the law imposes the duty upon the one going ahead to turn to the right and permit him to pass. He knows that in the absence of such a warning the one driving ahead has the legal right to drive onto the left-hand side of the road if he chooses, and that he may exercise that right at the very moment he is attempting to pass. This is especially true upon the highways in the country where this accident occurred."

We think it reasonably clear that if the plaintiff had given a signal by his horn that he desired to pass the defendant's truck the driver thereof would then have known that a motor vehicle was immediately in the rear of his truck and a signal would have been given indicating that the truck driver intended to turn to the left into the left hand side of the road in order to reach the mill or elevator on the westerly side of the highway. It is plain in such event the accident would not have happened. It is true also that according to plaintiff's own admission given to the official highway patrolman the former had it in his power to avoid the accident but did not do what he concedes he could have done in avoidance of the accident. Additionally there would seem to be considerable doubt whether plaintiff had slowed his car as he testified he did. The proof is clear that after striking the truck, plaintiff's vehicle traveled 107 feet and then was stopped only by a railroad embankment about 2½ feet high and that the car left deep dents from its front wheels in that obstruction.

Under the facts shown as set forth above the statutes of the state and the preceding authorities cited dealing with the situation presented we are inclined to the view that the district court of Goshen County was correct in ordering a dismissal of plaintiff's action and its ruling in that respect should be affirmed.

*Affirmed.*

BLUME, C. J. and ILSLEY, J. concur.