**Roy Bruce CAMPBELL, Appellant (Defendant),**

v.

**W. S. HATCH COMPANY, a Utah Corporation, Appellee (Plaintiff).**

**Larry R. Hymas, Additional Defendant on Counterclaim.**

**No. 5371.**

Supreme Court of Wyoming.

Jan. 26, 1981.

John D. Rossetti, of Greenhalgh, Bussart, West & Rossetti, P.C., Rock Springs, for appellant.

Richard J. Mathey, of Marty & Ragsdale, Green River, for appellees.

Before ROSE, C. J.*, and McCLINTOCK, RAPER **, THOMAS and ROONEY, JJ.

ROSE, Chief Justice.

This is a property-damage case arising out of a highway accident. Plaintiff-appellee W.S. Hatch Co. owned a tanker truck and trailer which were damaged when its driver, plaintiff-appellee Larry R. Hymas, attempted to pass a pickup pulling a mobile home. The impact between the vehicles occurred when the pickup driver, defendant-appellant Roy Bruce Campbell, drifted over the center line during the passing process.

The district court, hearing the case without a jury, assessed 100 percent of the blame for the accident against the appellant. On appeal Mr. Campbell urges that Mr. Hymas was negligent as a matter of law for not sounding his horn before he undertook the passing operation. Appellant also argues that the trial judge was in error in concluding that under the facts of the case the appellee driver had no duty to sound his horn before passing.

We shall affirm.

## THE WYOMING STATUTES AND CASE LAW

■ Section 31–5–952(a), W.S.1977, provides:

"(a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than two hundred (200) feet, but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle. The *driver* of a motor vehicle *shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such*

*horn when upon a highway.*" (Emphasis added.)

Section 31–5–203, W.S.1977, states:

"(a) The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

"(i) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle;

"(ii) Except when overtaking and passing on the right is permitted, the *driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal* and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle." (Emphasis added.)

We agree with the trial court that "the law is clear that horns need be sounded only when reasonably necessary to insure safe operation . . . ." We base this conclusion on the language of § 31–5–952(a), supra, particularly the emphasized portion. Appellant relies on the language of § 31–5–203, supra, particularly the emphasized portion of subsection (a)(ii) for his claim that the overtaking vehicle *must always* sound its horn, even if the overtaking vehicle has no need to intrude into the lane occupied by the forward vehicle and even if the forward vehicle gives no indication of an intent to occupy or cross into the passing lane.

In support of this contention, appellant relies on *Fink v. Lewark*, 70 Wyo. 150, 246 P.2d 195 (1952), which does contain language and citations which support appellant's contention that § 31–5–203(a)(ii), supra, or a similar earlier statute,[1] should be interpreted to contain an absolute command to the effect that the overtaking vehicle must always sound it horn. However, we find this interpretation of § 31–5–203(a)(ii)

---

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

1. In *Fink* we discussed § 60–506, W.C.S. 1945, which is similar to but not identical to § 31–5–203(a), supra.

or the earlier statute to be vitiated by our later decision in *Checker Yellow Cab Co. v. Shiflett*, Wyo., 351 P.2d 660 (1960), in which *Fink* was distinguished.

Plaintiff Fink attempted to pass a truck within a no-passing zone of a highway. While Fink was attempting the pass, the truck turned left and the two vehicles collided. Fink sued for property damage to his car. In affirming the district court's decision in favor of the defendant-truck-driver, we mentioned, in addition to Fink's failure to sound his horn, Fink's high rate of speed, the no-passing markings, and Fink's statement to a highway patrolman that he could have avoided the accident.

In *Checker Yellow Cab Co.*, a cab collided with a left-turning truck while attempting to pass it. In this case the truck driver made an illegal left turn and the cab did not sound its horn prior to passing. We affirmed the trial court's judgment for the cab company against the truck owner and distinguished *Fink*. Id. at 665. In *Fink*, supra, 246 P.2d at 200, we had cited law favoring the forward vehicle, but in *Checker Yellow Cab Co.*, we questioned that law. *Checker Yellow Cab Co.*, supra, 351 P.2d at 663–664. Also, in *Checker Yellow Cab Co.*, id. at 664, we discussed a Louisiana case involving an overtaking and passing accident. We cited with approval the Louisiana court's statement to the effect that a statute providing for the overtaking vehicle to sound its horn only has applicability where the driver of the overtaking vehicle has reason to believe the forward vehicle will move into the passing lane.

Appellant also relies on *Blakeman v. Gopp*, Wyo., 364 P.2d 986 (1961), in which we affirmed the district court which held negligent a passing motorist who struck a nine-year-old riding her bicycle on the highway. The motorist had not honked before passing and the child apparently meandered to the left during the pass. The case is distinguishable from the matter at hand on at least two important grounds: (1) Blakeman, the motorist, passed the child in the child's own lane, *id.* at 987; and (2) the *Blakeman* court emphasized that bicycles driven by children often travel an erratic course, *id.* at 988.

Appellant also cites *Jack v. Browne*, Wyo., 410 P.2d 578 (1966), in which we upheld the trial court in finding the driver of an overtaking vehicle liable for an accident which occurred on a bridge. In assigning the blame for the accident, the trial court cited, inter alia, the failure of the overtaking auto to sound its horn. However, in that case there was conflicting evidence as to whether the vehicle being overtaken had crossed the center line; we said that the evidence would support a conclusion that it had stayed within its own lane. *Id.* at 581. We said that alternatively the driver of the vehicle being overtaken could have crossed the center lane without liability if he had a *clear view* and no warning of an overtaking vehicle. We further noted that the overtaking auto was traveling 65 miles per hour while the vehicle being passed was traveling 35 to 40 miles per hour. *Id.* at 580. Moreover, at the time of the attempted pass, the wind was blowing "as much as 54 miles per hour" or "from 41 to 54 miles per hour." *Id.* at 580–581. The case was decided by four justices, and two of them, in a concurring opinion, emphasized the negligence of the auto driver in attempting a high-speed pass on a bridge in strong wind. The majority opinion also mentioned the high wind.

█ This review of *Fink, Checker Yellow Cab Co., Blakeman* and *Jack* supra, persuades us that the trial court was correct in stating that an overtaking vehicle need only sound its horn if reasonably necessary for safe operation. Under certain circumstances a driver may be held negligent for not sounding his horn prior to attempting a pass. Such circumstances may include: (1) situations in which the overtaking vehicle intrudes into the lane occupied by the forward vehicle, *Blakeman; Jack,* supra; (2) situations in which the overtaking driver might expect the forward vehicle to meander due to wind, *Jack,* supra, or due to the immaturity of the forward driver, e. g., the child in *Blakeman;* and (3) situations in which the forward driver is likely to be

surprised by the pass, e. g., because the overtaking vehicle is passing illegally, *Fink*, supra, or because the forward driver is only a child, *Blakeman*, supra, or because the overtaking vehicle approached rapidly from behind,[2] *Jack*, supra. But under different circumstances, a driver need not sound his horn prior to attempting a pass. *Checker Yellow Cab Co.*, supra.

It is now appropriate to examine the particular facts of this case.

### THE FACTS

■ Appellant argues that when the facts of this case are examined, it must be concluded that it was reasonably necessary for appellee-driver to have blown his horn before attempting the passing movement.

Whether or not it was reasonably necessary under the facts of this case for Hymas to blow his horn before attempting to pass Campbell was an issue of fact for the trial court to determine. The trial court, in his memorandum opinion, concluded, "[T]here is nothing in the evidence that would place Mr. Hymas on notice that the sounding of the horn might be necessary." Where there is evidence to sustain a trial court's finding, this court will not interfere with that finding unless it is clearly erroneous or manifestly wrong. E. g., *Clausen v. Boland*, Wyo., 601 P.2d 541, 543 (1979). We find nothing either erroneous or manifestly wrong with the court's conclusion.

According to the statement of facts in appellant's brief, Hymas' passing attempt was undertaken on a "completely straight" portion of the road. He had been following the Campbell unit for approximately ten miles during which time Campbell had continuously driven his vehicle within half a foot to a foot of the center line in his assigned lane of traffic. The road was ap-

proximately 26 feet wide and the Hatch and Campbell vehicles were each eight feet wide. The lane Hymas was using as the passing lane was 11 feet in width. At the time of the accident, Campbell was "looking straight ahead for antelope."

These facts support the trial court's assessment that Campbell was to blame for the accident. Having followed Campbell for ten miles, Hymas could reasonably have expected Campbell to have been aware of his presence. Indeed, under our decision in *Checker Yellow Cab Co.*, 351 P.2d at 663, the overtaking vehicle was entitled to assume that the passing lane could be used with safety in the absence of any warning from the vehicle being passed. In the instant matter, this assumption must be regarded as having been reinforced by the fact that Campbell had stayed within his own lane during the ten miles of travel prior to the attempted pass.

Unlike the *Blakeman* and *Jack* cases, supra, there was no question in this case about the overtaking vehicle intruding into the lane of the vehicle being passed. Also, there is no evidence of unusual conditions in this case which would have suggested to Hymas that Campbell might encounter difficulty keeping his vehicle in his own lane during the pass.

■ The fact that Campbell was looking for antelope at the time of the accident hardly excuses his negligence in drifting or turning into the passing lane under the circumstances of this case. Campbell argues that the accident would not have occurred if only Hymas had alerted him to the fact that he was being passed by sounding his horn. This may be true, but the fact remains that Campbell was negligent in entering the passing lane without using due care.[3] In *Checker Yellow Cab Co.*, we held

---

2. The discussion in *Jack*, supra, 410 P.2d at 581, to the effect that the vehicle being overtaken might have lawfully crossed the center line "if he had a clear view and had no warning of a vehicle approaching from behind" suggests that the forward vehicle was surprised. Incidentally, § 31–5–201(a), W.S.1977, reproduced in footnote 4, infra, casts doubt on the validity of this statement from *Jack*, supra.

3. In view of the facts from appellant's brief that: (1) Campbell was looking for antelope at the time of the accident; (2) the road was completely straight at the scene of the accident; and (3) the overtaking vehicle was large, it is impossible to conclude that Campbell used due care in turning into the passing lane and into the path of Hymas' vehicle.

that "it was made the duty of the truck when changing its driving lane to make certain that this might be done with safety." 351 P.2d at 664. While we premised that conclusion where a city ordinance was involved, a factual circumstance not present here, we nevertheless note that we are here concerned with a state statute which is virtually identical to the city ordinance. Section 31–5–209(a)(i), W.S.1977, requires that a vehicle "be driven as nearly as practicable entirely within a single lane and *shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.*" (Emphasis added.) Also § 31–5–201(a), W.S.1977, required Campbell to be within the right lane of the road at the time of the accident.[4]

Our review of the evidence and of Wyoming law supports the conclusions that: (1) the trial judge could reasonably have found that Hymas was not under a duty to sound his horn before attempting the pass; (2) Campbell had a duty to use care in turning into the passing lane; (3) Campbell's own statement of the facts shows that Campbell was negligent in entering the passing lane; and (4) the accident was caused by Campbell's negligence.

The judgment of the trial court is affirmed.

---

4. Section 31–5–201(a), W.S.1977, provides:
   "(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
   "(i) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
   "(ii) When the right half of a roadway is closed to traffic while under construction or repair;
   "(iii) Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or
   "(iv) Upon a roadway designated and signposted for one-way traffic."