CHECKER YELLOW CAB CO., Inc., Appellant (Plaintiff below),

v.

David E. SHIFLETT and Harry E. Ruckman, Inc., a Corporation, d/b/a Pepsi-Cola and Seven-Up Bottling Co. of Cheyenne, Defendants below,

Herman F. Mannon, Appellee (Intervener below).

David E. SHIFLETT and Harry E. Ruckman, Inc., a Corporation, d/b/a Pepsi-Cola and Seven-Up Bottling Co. of Cheyenne, Appellants (Defendants below),

v.

CHECKER YELLOW CAB CO., Inc., Appellee (Plaintiff below),

Herman F. Mannon (Intervener below).

Nos. 2931, 2932.

Supreme Court of Wyoming.

May 3, 1960.

James P. Horiskey, Cheyenne, for Checker Yellow Cab Co.

Lathrop, Lathrop & Tilker, James A. Tilker, Cheyenne, for Shiflett and Harry E. Ruckman, Inc.

Walter C. Urbigkit, Jr., Cheyenne, for Herman F. Mannon.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The circumstances which precipitated this action are as follows: At about 9:00 a. m. on July 24, 1958, a truck, at a speed of between 5 and 10 miles per hour, was proceeding on its right side of a street, when a cab, traveling in the same direction at a speed somewhere between 20 and 40 miles per hour, attempted to pass it. Before the cab had completed the passing, the truck suddenly turned to the left with the purpose of entering a driveway on the opposite side of the street. The front end of the truck struck the right-side rear door of the cab, which then careened to its left side of the street and crashed into a car there parked at the curb.

The plaintiff cab company sued both the truck driver and the truck owner to recover damages for the injury to its cab, but by stipulation the action proceeded solely against the truck owner.

As the parked car was also injured, its owner was permitted to intervene and sought damages from both the truck owner and the cab owner. Trial was to the court without jury, and the plaintiff cab company was given judgment against the defendant truck owner for a total of $581.53, and the intervener was awarded judgment against both the plaintiff and the defendant for the sum of $532.10. The cab owner appeals from intervener's judgment and the truck owner appeals from the cab owner's judgment, but does not appeal from the intervener's judgment against it.

For convenience, the plaintiff cab company will be referred to as the cab, the defendant truck owner as the truck, and the intervener as the car.

The cab driver testified he would have completed the passing of the truck before the intersection was reached had the cab not been struck by the truck, and the evidence

662

unmistakably shows that the collision between the truck and cab occurred at a point no less than 9 feet from the closest point of the intersection of the street upon which the vehicles were traveling and the cross street to which they were approaching. However, the truck driver testified he started his left turn to enter the driveway at a point half way between the alley and the street. This would be 62½ feet from the cross street and even farther away than 9 feet from the intersection. A city policeman said the truck was 10 feet longer than an ordinary pickup truck. A city ordinance received in evidence prohibited the making of a left turn to enter a driveway. There was testimony that the truck flashed its light signals indicating a left turn would be made and that the truck's front and rear signal lights were in working condition both before and after the accident, and the truck driver testified he commenced that signaling when he started the left turn to enter the driveway. The cab driver said there was "never no signal given" and he did not see any signal and did not sound his horn. Another city ordinance received in evidence says that in overtaking and passing "the required signal" should be given. Still another ordinance received in evidence fixes the speed limit at the scene of the accident at 25 miles per hour and at 15 miles per hour at the nearest intersection. Other evidence showed the traveled street was a through street and there was no other traffic which would have any bearing upon either collision.

■ The contention of the truck in appealing from the cab's judgment against it is that the cab's contributory negligence was established by reason of the intervener's having obtained a judgment against the cab. In support of this theory, the truck represents: (1) that the cab unlawfully attempted to pass the truck at an intersection; (2) that the cab negligently failed to give warning of its intention to pass the truck; (3) that the cab negligently failed to observe the warning given by the light signaling of the truck; and (4) that the cab's

unlawful speed necessarily contributed to the first collision.

The truck-appellant presents no authorities to support his claim that the passing at an intersection is unlawful, and so far as the record is concerned, there is no ordinance in the city of Cheyenne which prevents this. Despite the truck's insistence that the cab was attempting to pass the truck within an intersection, all the evidence is exactly to the contrary. This refutes the truck's premise that the cab was passing the truck at an intersection and makes inapplicable all authorities dealing with intersection cases. Furthermore, it seems obvious and a reasonable inference that because of the respective speeds at which the two vehicles were traveling the passing would have been completed before the truck ever entered the intersection, even if the point of collision was but 9 feet from the intersection instead of being in the neighborhood of some 62½ feet as is indicated by the testimony of the truck driver. The contention that the first collision or the attempted passing occurred within an intersection is overruled.

The truck's next contention is that the cab contributed to the collision of the truck and cab by negligently failing to give warning of its intention to pass. In advancing this argument the truck seems to rely upon the following city ordinance received in evidence:

"18–937. Caution and Signaling. No driver shall turn, stop, change driving lanes, back, or overtake and pass another vehicle, without first giving the required signal and making certain that he can execute such movement with safety." Ordinances of the City of Cheyenne, Wyoming, 1950.

■ To our knowledge, there is no other or further ordinance which describes or defines what signal is required. Certainly no such ordinance was received in evidence and we will not speculate as to just what kind of signal was referred to by the ordinance. In consequence of this indefiniteness we may not properly say the cab vio-

lated any ordinance in this respect. In oral argument it was suggested that the cab should have sounded its horn, but opposing counsel stated, without being challenged, that it was improper to sound a horn within the city. In any event, governing ordinance or not, the effect of the horn-sounding failure is rather well discussed by this court in Christensen v. McCann, 41 Wyo. 101, 109, 282 P. 1061, 1063:

"It is said that plaintiff did not sound his horn as he approached the intersection, as required by section 3, c. 158, Laws of 1925 [repealed Laws of 1939, ch. 126, § 86]. Aside from the question of whether the requirement mentioned was intended to apply only to the highways of this state, outside of cities and towns, it appears that Mrs. McCann testified that she looked to the left as she approached the intersection. She also testified concerning the rate of speed of plaintiff's truck, which would appear to indicate that she saw it. This testimony was sufficient to permit the trial court to reach the conclusion that the failure to give the required signal was not the proximate cause of the accident. That in effect was the result of the general finding below against Mrs. McCann on the question of negligence. The rule seems to be that the violation of a duty imposed by statute upon an automobile driver does not of itself impose liability for an injury caused by his car, but it must appear also that the violation of the legal duty was a proximate cause of the injury. Berry's Law of Automobiles (5th Ed.) § 216, and extended list of cited cases; 42 C.J. 886, 887, § 587; 2 Blashfield, Cyclopedia of Automobile Law, 1219, § 15."

This pronouncement is quite in accord with the generally accepted opinion that the violation of a statute or ordinance relating to rules of the road or use of streets or highways does not create actionable negligence or preclude recovery for injury sustained unless the violation

was the proximate cause of the accident. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., § 2591, p. 79; 5A Am.Jur., Automobile and Highway Traffic, § 231, p. 368 et seq; 38 Am. Jur., Negligence, § 214, p. 899; 65 C.J.S. Negligence § 127, p. 740.

The cab had a right to assume that the truck would observe the city ordinance prohibiting the making of a left hand turn to enter the driveway. There was no other traffic on the street. The rate of movement of the truck traveling well on its own side of the street gave no warning that the way ahead in the passing lane might not be used with safety. While we find some cases which favor the rule that in overtaking and passing accidents the forward car has the superior right, those cases are distinguishable from the one before us. Those holdings were made in cases where the forward car had the lawful right to make left turn. See Annotation, 39 A.L.R. 2d 15, 46 et seq. But where the law does not give the forward car the right to make a left turn such a rule would be unreasonable and we do not accept it. Even where the law does give such a right there are many cases, such as Graham v. Roderick, 32 Wash.2d 427, 202 P.2d 253, 258, 6 A.L. R.2d 1237, 1242, which hold to the contrary saying:

"It appears to us to be axiomatic that, in making a left-hand turn or a 'U' turn, from the right, or outside, lane, at the intersection, and proceeding across the arterial, the respondent driver did not have the right of way. In the exercise of reasonable care, he should have yielded to traffic proceeding in either direction along the arterial. * * *"

Furthermore, even where by statute it is made a presumption that the overtaking vehicle is negligent when a collision occurs, such statutory edict has been held not to apply where the attempt to pass is made when there is sufficient distance ahead to permit the passing to be made with safety, as was true in the present

case. 61 C.J.S. Motor Vehicles § 511(4), p. 13; Guillorly v. Bordelon Lines, La. App., 23 So.2d 669.

Additionally, under the provisions of the very ordinance relied upon by the truck appellant, it was made the duty of the truck when changing its driving lane to make certain that this might be done with safety. Also the cab had a right to assume that the truck would observe the city ordinance prohibiting it from making a left hand turn to enter a driveway. All these matters have bearing upon the duty imposed upon the passing vehicle. An enlightening case which is relevant is Great American Ins. Co. v. New Amsterdam Casualty Co., La.App., 15 So.2d 241, where a pickup truck attempted to pass a three-wheeled motorbike. Admittedly the pickup was traveling 10 miles in excess of the lawful speed and did not give audible warning of intention to pass by blowing its horn. When the motorbike suddenly turned left to make a "U" turn, the pickup struck it and was sued for damages for the injury to the motorbike. Judgment being for the pickup, an appeal was taken relying for reversal upon the claim that the pickup was negligent in exceeding the speed limit and in violation of a highway regulatory act requiring an overtaking vehicle to give audible and sufficient warning of intention to pass before overtaking and passing or attempting to pass a vehicle proceeding in the same direction. Although the case is not identical with the one at bar, the parallel in important facts is sufficient to make the court's statements and rulings persuasive, even though, as previously pointed out, in the case before us no sound signal is required by ordinance. After indicating that because of the regulatory act, had the motorbike been traveling in the left lane or had manifested the intention to turn, it would have been the duty of the overtaking car to sound its horn, the court said at 15 So.2d 241, 245:

"In the case of De La Vergne v. Employers Liability Assur. Corp., Ltd., La.App., 4 So.2d 66, 69, we stated:

'The purpose of the law in requiring the giving of an audible warning by the overtaking vehicle, as we view it, is to favor its driver to the extent that his normal progress on the highway will not be unnecessarily impeded by the driver of the car preceding him in not leaving or giving him sufficient clearance in which to pass ahead.' There was nothing in the manner of the motorbike operator's driving up to the very moment the Ford car was in the act of passing the motorbike which indicated to Thibodeau [the pickup] that his lane of travel would not remain open on that side for him to pass ahead."

In the light of all these circumstances, the court was entitled to find the failure of the cab to give warning of its intention to pass neither violated any ordinance in evidence nor constituted the contributory negligence necessary to avoid the truck's liability to it for the damage caused the cab. The contention of the truck-appellant in this respect is overruled.

The truck-appellant's next contention, that the cab negligently failed to observe the warning signal claimed to have been given by the truck, involves the court's determination of the fact in the face of conflicting evidence. While there was substantial evidence to permit the conclusion that such a signal was given, there was also the conflicting evidence of the cab driver that no such signal was given. But there is a further matter which fortifies and supports the court's implied finding that either no such signal was given or if given was inadequate to warn the cab. The evidence fails to fix the time of giving of the truck's alleged signal in relation to the position of the cab. It would seem obvious that a flashing light on the front or rear of the truck might not have been visible to the cab driver if the light was turned on when the position of the driver in the cab was either very close to the truck or alongside it. We must, therefore, hold that there was no error in the judgment against the truck on the ground that

the warning signal given by the truck was negligently disregarded by the cab.

The truck-appellant's last point is that the cab's unlawful speed contributed to the first collision. If we assume that the trial court elected to accept the testimony of the cab driver, the cab's speed would not have been unlawful and this appellant would have no cause for complaint on that score. If, however, we assume, as we feel we are entitled to do because of the court's judgment in favor of the car and against the cab, that the speed of the cab was unlawful and somewhat over 25 miles per hour up to as much as 40 miles per hour, then we must inquire if the unlawful speed of the cab was a proximate cause of the first impact.

In the case of Christensen v. McCann, 41 Wyo. 101, 110, 282 P. 1061, 1063, where the speed prescribed by ordinance was 15 miles per hour and the overtaking vehicle was considered to be traveling at a speed of 35 miles per hour, it was said:

"* * * While the actual speed of his vehicle was in dispute, as already indicated, some witnesses placing it about the speed required by the ordinance just quoted from, still, applying the rule of proximate cause above mentioned, the higher rate of speed would not support counsel's contention. The court below was fully warranted in concluding from the testimony abstracted as above that the speed of plaintiff's truck, assuming it to have been 20 miles per hour in violation of the ordinance, was not the proximate cause of the collision. Indeed, recalling that the truck was struck well towards the rear on the right side, and the additional fact that the vehicle was 15 feet in length, it is demonstrable with practically mathematical certainty that a 15-mile an hour speed on its part would not have avoided the accident. The point of impact would in such case have been only more towards the center of the truck, instead of towards its end."

The appellant truck asks us to take judicial notice "that the average motor vehicle is about 15 to 20 feet long" and to "note that the damage to the cab as a result of the first collision is more than half way back on the cab, approximately 10 to 12 feet". If we do this as requested, it is as much a "mathematical certainty" that even if the cab's speed had been a lawful 25 miles per hour, rather than the maximum unlawful speed testified to of 40 miles per hour, the truck would still have struck the cab at some point forward of the point of impact. See also O'Mally v. Eagan, 43 Wyo. 233, 244, 2 P.2d 1063, 1067, 77 A.L.R. 582, 590, rehearing denied O'Malley v. Eagan, 43 Wyo. 350, 5 P.2d 276, 77 A.L.R. 582; Homerding v. Pospychalla, 228 Wis. 606, 280 N.W. 409; Hitz v. Pospychalla, 228 Wis. 614, 280 N.W. 413.

In consequence we must hold that the speed of the cab, even though it was unlawful, was not a proximate cause of the first collision.

The truck insists Fink v. Lewark, 70 Wyo. 150, 246 P.2d 195, is controlling on the question of the cab's negligence, but we do not agree. In the Fink case there was no ordinance or statute prohibiting the making of a left turn, and the passing vehicle itself was in violation of a highway marking indicating a "no passing" zone. The authorities referred to or quoted in the Fink case are not at all at variance with our holding here, as we see it, but all seeming inconsistencies may be fairly reconciled by reason of the particular circumstances existing in this case when viewed in the light of the city ordinances appearing in the evidence.

Gosma v. Adams, 102 Fla. 305, 135 So. 806, 78 A.L.R. 1193, and the city ordinance defining what constitutes an intersection, which are cited in support of the claim that the first collision occurred in an intersection, fail entirely to uphold the truck-appellant's position. What we have said respecting the intersection feature is that the passing did not occur within the intersection. We say nothing as to whether

the meeting of a cross street in dead end when it comes to another street is or is not an intersection.

Notwithstanding we have already pointed out the first collision did not occur at or within an intersection, it might not be amiss to say that even had this collision occurred within an intersection while the cab was traveling at an unlawful speed, under all the circumstances present in this case, the negligent unlawful speed could not be said to be the proximate or contributing cause of the first collision.

We also agree with previous statements of this court made in Lemos v. Madden, 28 Wyo. 1, 200 P. 791, respecting the law of proximate cause and responsibility; Johnston v. Vukelic, 67 Wyo. 1, 213 P.2d 925, defining contributory negligence and allocation of the burden of proof; and the general observation quoted respecting care and vigilance to be exercised by vehicular travelers, appearing in Ries v. Cheyenne Cab & Transfer Co., 53 Wyo. 104, 79 P. 2d 468, but we believe they fortify rather than weaken the decisions we now make.

In view of what has been said respecting the several grounds upon which the truck-appellant relies for reversal, we must hold they are insufficient and, consequently, affirm the judgment in favor of the plaintiff cab and against the defendant truck.

Coming now to the appeal of the cab from the judgment against it and in favor of the intervener car, in order to uphold this judgment it must appear that there was some negligence on the part of the cab in addition to that of the truck to which the truck confesses by its failure to appeal from that determination.

As we view the evidence, the only possible negligence of the cab which contributed to the car's injury lies in the speed of the cab. As has been heretofore intimated, the court was privileged to find that the cab was traveling at a speed anywhere between 20 and 40 miles per hour. If, therefore, for instance the court was convinced the cab was traveling at the unlaw-

ful maximum of 40 miles per hour, that violation of the city's ordinance was negligence, and if such negligence was a proximate cause of the cab-car collision, it was proper for the court to hold the cab jointly liable with the truck to respond in damages to the car.

Again the answer to the question of proximate cause either upholds or refutes the cab-appellant's contention that the court erred in the judgment against it. The theory upon which this appellant relies is simply that because the court in the same action had found the truck liable to the cab, thus absolving it of contributory negligence in the first collision, ipso facto, the cab is also acquitted of negligence in causing the collision with the car.

The argument, while plausible, is not necessarily sound. The holding that the speed of the cab was not a contributing factor in causing the first collision was expressly made in contemplation that the cab's speed might have been unlawful, even up to as much as 15 miles in excess of the permitted speed, and it was pointed out that even at the lawful speed the fault of the truck would still have caused that collision. But had the court felt the speed of the cab was in fact 40 miles per hour, as it was entitled to do, it might also have legitimately reasoned that the 15 mile excess over the lawful speed was an important element concurring with the negligence of the truck to bring about the damage to the car. In other words, even though the speed of the cab was not a negligence which contributed to the collision between the truck and cab, yet when the cab was deflected from its proper course, the cab's unlawful speed became a major factor in its striking the car and being the damaging force which caused the car's injury. This was sufficient to render the cab jointly liable with the truck for the car's damage. Under the evidence it was not unreasonable for the court to conclude that had the first collision occurred when the cab was proceeding at a lawful speed, it still could have avoided

hitting the car by stopping before the impact, whereas at the unlawful speed it could not have so avoided the accident.

This seems to be a clear case where concurrent causes acting contemporaneously had together caused the injury to the car which would not have been damaged in the absence of the negligence of either the truck or the cab. See 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., § 2551, p. 39, and City of Okmulgee v. Hemphill, 183 Okl. 450, 83 P.2d 189, 191, where it is said:

"* * * Concurrent causes are causes acting contemporaneously and which together cause the injury, which injury would not have resulted in the absence of either. * * *"

What this court said in Lemos v. Madden, 28 Wyo. 1, 16, 17, 200 P. 791, 796, seems apropos:

"* * * Hence it is futile to distinguish between an intervening cause and a concurrent cause. In a sense, at least, an intervening cause will always be a concurrent cause, assuming that it has any connection with the injury at all. But the point is, What is its efficiency? The intervening agency may be of such nature and character as not to be considered a producing cause at all, and hence remote in the chain of causation; again, *it may rise to the dignity of an efficient concurrent cause, and still leave the original cause as one of the proximate causes*; * * *." (Emphasis supplied.)

The cab in this case may be said to be the intervening agency which rose "to the dignity of an efficient concurrent cause" which made it liable to the car, although it still left the truck, the original cause, also liable to the car.

The evidence makes it plain that the damage to the car did not occur merely because the cab passed the truck, nor would the parked car have been injured if all the truck did was to violate the city ordinance by improperly turning left to enter the driveway. It was the combination or the concurrent actions of the cab and truck that developed a situation which resulted in the damage to the car. The truck and cab were each guilty of a negligent action which proximately caused injury to the car. This leaves no question as to the propriety of the court's judgment in favor of the intervener and against both the cab and truck and that judgment of the trial court will, therefore, be upheld.

The judgment of the trial court will be affirmed in its entirety.

Affirmed.