**J. Frederick DUBUS, Appellant (Plaintiff),**

v.

**DRESSER INDUSTRIES, a Delaware Corporation, W. S. Hatch Company, Inc., a Utah Corporation, Raymond S. Johnson, Doe One, and Doe Two, Appellees (Defendants).**

No. 5648.

Supreme Court of Wyoming.

Aug. 4, 1982.

Burton W. Guetz and Larry R. Clapp, Fagan, Fagan & Clapp, Casper, for appellant.

G. G. Greenlee and Jo Sherman of Murane & Bostwick, Casper, for appellees Dresser Industries and Johnson.

Frank D. Neville, Richard L. Williams and Patricia M. Baird of Williams, Porter, Day & Neville, Casper, for appellee W. S. Hatch Co., Inc.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

The appellant, Dubus, brought an action against Dresser Industries, its employee Raymond Johnson, and W. S. Hatch Company for injuries sustained by Dubus on a highway located northwest of Riverton, Wyoming. On motion of the defendants-appellees, the trial judge ordered that summary judgment be entered against Mr. Dubus because the court found that he had not presented any issue of material fact as to appellees' negligence or liability.[1] Responding to the summary disposition of his case the appellant raises the following issues for our review:

1. Did the trial judge err in granting appellees' motion for summary judgment?
2. Is the rescue doctrine applicable to the facts of this case?

We will hold that the trial judge erred in granting summary judgment in favor of appellees Dresser and Raymond Johnson, and we will reverse as to them. As to appellee W. S. Hatch Company, we will hold that the entry of judgment was proper and will affirm that portion of the court's order.

## FACTS

The incident giving rise to this litigation occurred during the nighttime hours of January 10–11, 1979 in a cutbank area known as Circle Ridge Road on a highway located northwest of Riverton, Wyoming. On that night, two W. S. Hatch Company vehicles became disabled on a portion of the highway which intersects a cutbank. The highway was slippery and drifted over with blowing snow, and, while the skies were clear, heavy winds and cold temperatures had created ground blizzard conditions. A short time later, a Dresser Industries pickup, driven by Raymond Johnson, proceeded into the cut, and in order to avoid a collision with the jackknifed Hatch vehicle, Johnson was forced into a nearby snowbank where his pickup overturned, spilling a tire and some boxes of drill bits out onto the highway. After this mishap, Johnson and the drivers of the Hatch vehicles drove to a nearby town, but before leaving the scene they turned on the running lights on the Hatch vehicle and the emergency flashers on the Dresser pickup. They say that they also set out warning reflectors around both vehicles although this fact is disputed by Mr. Dubus.

That same evening, the appellant, Dubus, left Riverton for a drill site in the Circle Ridge area where he worked as a mud engineer. While proceeding down the highway he observed flashing lights in the roadway and, upon reaching the scene, Mr. Dubus stopped his vehicle to determine if anyone was injured or in need of assistance. In order to make this inquiry, Dubus stepped from his vehicle and walked along the highway toward the overturned Dresser pickup.

---

1. Appellees' motion was brought pursuant to summary judgment Rule 56, W.R.C.P., which provides in relevant part:

"(b) *For defending party.*—A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) *Motion and proceedings thereon.*—The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

While walking on the slippery, snow-covered road, his right foot suddenly struck something and he fell to the pavement with such a force that he was rendered unconscious. When he regained consciousness, Mr. Dubus observed a drill-bit box lying immediately adjacent to his right hip and right shoulder. The fall resulted in a severe hip injury as well as a broken leg, and Dubus also complains of back pain.

Appellant Dubus filed the present action alleging that the appellees were negligent in the following respects:

1. Failing to place or maintain flares and reflectors at the scene of the accident;

2. Failing to remain at the scene to warn approaching travelers; and

3. Failing to remove the drill-bit boxes which were strewn on the highway.

## APPELLATE RULES FOR REVIEWING SUMMARY JUDGMENT

We have said many times that when reviewing the granting of summary judgment on appeal.

" '... [We] have exactly the same duty as the trial judge and, assuming the record is complete, we have exactly the same material and information in front of us as he did....' *Seay v. Vialpando and Anderson*, Wyo., 567 P.2d 285, 287; *Hunter v. Farmers Insurance Group*, Wyo., 554 P.2d 1239, 1244, and *Knudson v. Hilzer*, Wyo., 551 P.2d 680, 685." *Timmons v. Reed*, Wyo., 569 P.2d 112, 115 (1977).

In contemplating an appeal from a summary judgment we must also inquire from the viewpoint most favorable to the party opposing the motion. *Timmons v. Reed*, supra, 569 P.2d at 116; *Shrum v. Zeltwanger*, Wyo., 559 P.2d 1384, 1387 (1977); *Bluejacket v. Carney*, Wyo., 550 P.2d 494, 497 (1976). It is settled that, in a summary judgment proceeding, the moving party has the burden of proving the absence of any genuine issue of material fact. *Mealey v. City of Laramie*, Wyo., 472 P.2d 787, 792 (1970); *Kover v. Hufsmith*, Wyo., 496 P.2d 908, 910 (1972). Finally, we are reminded that negligence claims do not lend themselves readily to summary adjudication. See: *Gilliland v. Steinhoefel*, Wyo., 521 P.2d 1350, 1352 (1974); *Forbes Company v. MacNeel*, Wyo., 382 P.2d 56, 57 (1963).

Given these guidelines, it became incumbent upon the movants, Dresser, Johnson, and W. S. Hatch, to show this court that appellant's claims of negligence were unsupported and thus presented no genuine issues of material fact.

## WAS ENTRY OF SUMMARY JUDGMENT PROPER?

One of the allegations of negligence has to do with the charge that the appellees failed to place reflectors, flares or other warning devices around their disabled vehicles. In urging this position, Dubus relies on § 31–5–959(a), W.S.1977, which provides:

"(a) Whenever any motor truck, passenger bus, truck tractor, trailer, semitrailer or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in paragraph (b):

"(i) A lighted fusee, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at *the traffic side* of the vehicle in the direction of the nearest *approaching traffic*.

"(ii) As soon thereafter as possible but in any event within the burning period of the fusee (fifteen (15) minutes), the driver shall place three (3) liquid-burning flares (pot torches), or three (3) lighted red electric lanterns or three (3) portable red emergency reflectors on the traveled portion of the highway in the following order:

"(A) One (1) approximately one hundred (100) feet from the disabled vehicle in the center of the lane occupied by such vehicle and *toward traffic approaching in that lane.*

"(B) One (1) approximately one hundred (100) feet in the opposite direction from the disabled vehicle and in the center of the *traffic lane occupied by such vehicle.*

"(C) One (1) at the *traffic side* of the disabled vehicle not less than ten (10) feet rearward or forward thereof in the direction of *the nearest approaching traffic.* If a lighted red electric lantern or a red portable emergency reflector has been placed at the *traffic side* of the vehicle in accordance with paragraph (I) [subdivision (a)(i) ] of this section, it may be used for this purpose." (Emphasis added.)

Even though the statute repeatedly refers to oncoming traffic as being the class of motorists that the statute is designed to protect from crashing into a disabled vehicle, Mr. Dubus argues that this statute obligated the appellees to set flares, reflectors, and other warning devices in a position capable of warning him (while *walking* in the vicinity) of the hazards that had been deposited on the highway including debris such as that over which he fell. He also argues that when he arrived at the accident scene, he saw no warning flares or reflectors, even though appellees say that they placed reflectors on the highway in the vicinity of their vehicles.

The first question to be resolved is this: Who is § 31–5–959(a) intended to protect? The answer is to be found in the language of the statute itself, where it becomes clear that the legislature intended to require the owner of a disabled vehicle to set flares or reflectors *so that others operating vehicles* on the highway are warned of the dangers occasioned by stalled and disabled vehicles. Keeping this in mind, we must then ask— under the facts of this case—was there a breach of duty that defendants owed the plaintiff as a result of the alleged failure to comply with § 31–5–959(a)? And, if there was a breach of duty, we must then inquire whether or not the breach was a proximate cause of appellant's injuries.

The statute which defines the conduct of those whose vehicles are disabled on the highway did not create a duty of care which the defendants owed to this plaintiff.

■ The determination of the existence of a duty of care is a question of law. *Medlock v. Van Wagner,* Wyo., 625 P.2d 207 (1981), citing *Maxted v. Pacific Car & Foundry Company,* Wyo., 527 P.2d 832 (1974); *Distad v. Cubin,* Wyo., 633 P.2d 167 (1981). See also: *Zanetti Bus Lines, Inc. v. Logan,* Wyo., 400 P.2d 482 (1965); *Michel v. Valdastri, Ltd.,* 59 Haw. 53, 575 P.2d 1299 (1978); *Webster v. WXYZ,* 59 Mich.App. 375, 229 N.W.2d 460 (1975).

In *Distad v. Cubin,* supra, we said, with reference to whether or not the breach of a statute, ordinance or regulation would constitute evidence of negligence, that this would be determined by the rule announced in Restatement of Torts 2d, including § 286, 287, 288A, 288B and 288C. We went on to quote the Restatement rule applicable here when we referred to § 286, at p. 175, where it says:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment * * * whose purpose is found to be exclusively or in part

"(a) To protect a class of persons which includes the one whose interest is invaded, * * * "

Given these directions, we look to see whether or not the appellant falls into the class of persons "whose interest[s] [are] invaded" by a violation of § 31–5–959(a) because, if he does not, then the statute imposes no duty of care for the breach of which he will be heard to successfully complain.

■ We have no trouble in finding that Mr. Dubus does not fall within the class contemplated for protection by the statute. When he was injured, *plaintiff was a pedestrian.* The statute clearly contemplates that the warning devices would be placed on the highway to protect oncoming *vehicular traffic* from disabled vehicles. As a motorist, Mr. Dubus had already been warned of the disabled vehicles by reason of the flashing lights which had been turned on by the occupants before they left the

scene—that was all the statute was designed to do. His interests were therefore not invaded by a violation of the statute upon which he relies. This being so, we are compelled to hold that Dubus was not a member of the class which the statute was intended to protect. Even if he had been a member of a class the statute was designed to protect and the defendants had not complied with the terms thereof, the defendants' violation of the statute was not the proximate cause of Dubus' injuries because the statute calls for such protective action as will warn *oncoming traffic* that there is a problem on the highway ahead, and its provisions would not have the effect of lighting up the distressed area to protect pedestrians from debris upon the highway.[2] Reflectors, of course, would not have furnished any such protection and therefore it matters not whether reflectors were placed around the vehicle before the drivers left the scene.

The trial court therefore properly found that there was no genuine issue of material fact structured by the allegation of injury resulting from a violation of § 31–5–959(a), W.S.1977.

■ Much of the same logic is applicable to appellant's second claim regarding the failure of appellees to remain at the scene in order to *warn approaching traffic* of the dangerous situation. There is no need to discuss this charge except to say that, since the record reflects that appellant's injuries occurred while he was walking on the highway, he does not fall within the class to which the plaintiff alleges there is a duty owed. *Distad v. Cubin*, supra. At the time appellant was injured, he was not a motorist and the plaintiff alleges a duty to warn "approaching traffic." This category does not include pedestrians. When Dubus was a member of the class contemplated by the term "approaching traffic," he *was* warned and he *did* stop his vehicle. Appellant's second claim was, for these reasons, a proper subject for summary disposition.

Appellant's third claim of negligence centers upon a failure of the appellees to remove from the highway the drill boxes which were thrown from the bed of the Dresser pickup when it overturned. With respect to this claim, the appellees do not dispute the fact that the boxes were on the highway; however, they allege that summary judgment on this claim was proper because appellant failed to show that the presence of the boxes caused him to fall. It is also their position that the statute requiring removal of debris was not applicable to them and the statute was not designed to protect the appellant under the facts of this case.

We hold that the trial judge should not have granted the summary judgment to Johnson and Dresser on appellant's third claim because, in our opinion, he describes a genuine issue of material fact as respects these defendants when he establishes that the boxes were on the highway in violation of statute and when he establishes their proximity to the plaintiff when he regained consciousness.

■ We do, however, agree that as to W. S. Hatch and its drivers there is no genuine issue of material fact established with respect to the boxes of drill bits which caused appellant to fall. Hatch did not own the boxes. They were not in its possession at the time of the mishap, nor does the record reflect that Hatch is responsible for the dropping and scattering of the boxes from

---

**2.** It is said in *Grayson v. Williams*, 256 F.2d 61, 64–65, (10 Cir. 1958), and quoted in *Zanetti Bus Lines, Inc. v. Hurd*, 320 F.2d 123, 128 (10 Cir. 1963):

  " ' * * * [T]he Wyoming court * * * is * * * committed to the doctrine that a violation of a traffic law or regulation will impose liability only when it is the proximate cause of the resulting injuries.' ",

citing *Nelson v. Brames*, 241 F.2d 256 (10 Cir. 1957); *Checker Yellow Cab Co. v. Shiflett*, Wyo., 351 P.2d 660. (1960); *Christensen v. McCann*, 41 Wyo. 101, 282 P. 1061 (1929). This rule is announced in *Checker Yellow Cab Co. v. Shiflett*, 351 P.2d at 663, with the following citations: 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed. § 2591, p. 79; 5A Am.Jur., Automobile and Highway Traffic, § 231, p. 368 et seq.; 38 Am. Jur., Negligence, § 214, p. 899; 65 C.J.S. Negligence § 127, p. 740.

the Dresser vehicle. Therefore, summary judgment as to the appellee Hatch in appellant's third claim is affirmed. We do, however, view the responsibilities of Dresser and Johnson somewhat differently.

■ In urging that appellees Dresser and Johnson were negligent in failing to remove the boxes after they were strewn about the highway and that such breach caused him to fall, the appellant looks to § 31–5–118, W.S.1977. That section provides:

"(a) No person shall throw or deposit upon any highway any glass bottle, glass, nails, tacks, wire, cans, or any other substance likely to injure any person, animal, or vehicle upon such highway.

"(b) *Any person who drops, or permits to be dropped or thrown, upon any highway any destructive or injurious material shall immediately remove the same or cause it to be removed.*

"(c) Any person removing a wrecked or damaged vehicle from a highway shall remove any glass or other injurious substance dropped upon the highway from such vehicle." (Emphasis added.)

Mr. Dubus relies upon the language emphasized above in subsection (b) of § 31–5–118, W.S.1977. That portion of the statute requires a user of a highway to remove any "destructive or injurious material" which he causes to be placed there. We are once more confronted with the question of whether the statute imposes a duty of care upon Dresser and Johnson. *Medlock v. Van Wagner*, supra. The intent of the legislature in imposing such a duty upon the users of Wyoming's highways is directed toward the fact that such deleterious materials, if not removed, are likely to present hazards and dangers to other travelers, whether they be in an automobile or travelling on foot. Such a duty upon highway users has been discussed in other authorities and the general rule appears to be that a person who causes or suffers an obstruction to be placed upon a highway has a duty to remove it, and a failure to do so may result in liability to the party causing the obstruction. 4 Blashfield Automobile Law and Practice, § 162.10, p. 353 (1965). The rule has also been stated as follows:

"Liability for injuries to travelers or to property rightfully in a highway as the result of the presence of dangerous or deleterious substances therein may be predicated upon placing or leaving such substances in the way without right or authority, or, where such act is not unlawful, upon a failure to exercise reasonable care to guard against such injuries. Where liability is predicated on negligence, the test is whether injury from such cause should or might, in the exercise of ordinary care, have been foreseen or apprehended. The leaving in a highway of substances likely to injure travelers is in some instances prohibited by statute." (Footnotes omitted.) 39 Am. Jur.2d, Highways, Streets, and Bridges, § 468, p. 868 (1968).

In *Brown v. Nebraska Public Power District*, 209 Neb. 61, 306 N.W.2d 167, 170–171 (1981), the court held that when one engaged in the lawful use of a highway causes an obstruction which creates a danger to the travelling public, he must use ordinary care to prevent injury, where he can foresee that said obstruction is calculated to do injury. See also: *Kirkham v. Hickerson Bros. Truck Co.*, 162 Colo. 125, 425 P.2d 34 (1967); *Cuddy v. Tyrrell*, 171 Kan. 232, 232 P.2d 607 (1951); *Kolb v. Isenberg*, 150 Pa. Super. 482, 28 A.2d 729 (1942); *Simonsen v. Thorin*, 120 Neb. 684, 234 N.W. 628 (1931). The reasons for such rules of the road were stated clearly in *Westchester Fire Ins. Co. v. Continental Ins. Co.*, 126 N.J.Super. 29, 312 A.2d 664, 669 (1973):

"In our mobile society the act of throwing or dropping objects from moving vehicles is not such an uncommon phenomenon that such occurrence may not be anticipated, nor so inconsequential that members of the public need no financial protection from the consequences thereof. However antisocial such conduct may be, everyday experience tells us that various objects are thrown or permitted to fall from moving vehicles. Common examples are lighted cigarettes and cigars, food and drink containers, and other de-

bris. Any one of such objects has a potential for injury to persons on and along the highway. It is of some significance that the Legislature has seen fit to prohibit the loading of vehicles in such a manner as to permit them to spill or scatter their contents on the street. N.J. S.A. 39:4–77. In the same vein, the Legislature has proscribed the throwing or dropping of objects from vehicles while on the highway. N.J.S.A. 39:4–64."

We believe that under these rules and the language of § 31–5–118(b), W.S.1977, the appellant sufficiently established that appellants Johnson and Dresser, given the opportunity to remove the debris, owed a duty to those rightfully using the highway—including the appellant—to remove the drill-bit boxes from the road.

The obligation imposed upon courts by *Medlock v. Van Wagner* is heavy. As we have noted, that case holds that whether a duty of care is owed to a plaintiff by the defendant is a question of law for the court to decide. We have held supra that no such duty was owed under § 31–5–959(a) because that statute only applied to motor vehicle traffic while, in the immediate instance, where we make the same inquiry of § 31–5–118, we reach the opposite conclusion. We hold that this last-mentioned statute structures a duty of care owing the plaintiff-appellant Dubus by the occupants of the Dresser vehicle because they should have been able to foresee that they had created a situation on the highway which was almost certain to attract those who would stop to help those who might be in distress. Such a person would necessarily have to walk to the scene and he would have a right to use the highway as he did it. Since such conduct was foreseeable, and, since the record shows that the occupants of the Dresser vehicle had ample time to clean up the highway in conformity with the statute, we believe and hold that the statute imposed a duty of care upon the defendant Dresser employees (and therefore Dresser under respondeat superior) which inured to the benefit of the plaintiff as he walked in the vicinity of the disabled vehicle.

The question of whether Johnson and Dresser were negligent in leaving the drill-bit boxes on the highway in violation of the statute becomes a question of fact for the jury because, as we have previously said, the violation of a traffic regulation is evidence of negligence, providing the plaintiff belongs to the class "whose interests are invaded" and providing further that the violation of the traffic regulation is a proximate cause of the plaintiff's injury. We held in *Hester v. Coliseum Motor Co.*, 41 Wyo. 345, 285 P. 781, 784 (1930):

"In connection with these statutory rules it must be borne in mind that the violation of a legal duty by a driver on the highway does not necessarily carry with it liability for an injury caused by his car, as to incur such liability the violation must have been the proximate cause of the injury concerning which complaint is made. *Christensen v. McCann* (Wyo.) [41 Wyo. 101], 282 P. 1061; *Lane v. Mullen*, 285 Pa. 161, 131 A. 718; *Hatch v. Daniels*, 96 Vt. 89, 117 A. 105; *Trudell v. James Cape & Sons Co.*, 187 Wis. 276, 202 N.W. 696, 698; 42 C.J. 900. *Violation of traffic regulations, also, whether they be of the state or municipality, are at least evidence of negligence.* In 2 Blashfield's Cyclopedia of Automobile Law, 1158, where many cases are cited, it is stated that: 'By the great weight of authority such violation is negligence per se.' See, also, 42 C.J. 899, 900, § 605, and cases cited." (Emphasis added.)

See also: *Zanetti Bus Lines, Inc. v. Logan*, supra; *Distad v. Cubin*, supra; *Wallis v. Nauman*, 61 Wyo. 231, 157 P.2d 285 (1945); *O'Malley v. Eagan*, 43 Wyo. 233, 2 P.2d 1063 (1931).

We cannot, therefore, say as we did with respect to § 31–5–959(a) that this regulation, § 31–5–118, applies only to the motoring public and thus does not invade the interests of this pedestrian-plaintiff. This statute does formulate a duty of care owing to the plaintiff by the defendant, the violation of which, under the facts of this case, is, at least, evidence of negligence.

As to the causation element, we hold that appellant established sufficient facts to permit a jury to reasonably conclude that he fell as a result of striking one of the boxes with his right foot.

## THE RESCUE DOCTRINE

In this appeal, the parties have spent a considerable amount of time arguing the applicability or inapplicability of the rescue doctrine to the facts present here. Our understanding of the rescue doctrine allows us to dispose of this question rather summarily because, in our judgment, that doctrine is inapplicable to this case.

Generally speaking, the rescue doctrine provides that one who is injured in reasonably undertaking a necessary rescue may recover from the person whose negligence created the situation giving rise to the rescue. See: *Britt v. Mangum*, 261 N.C. 250, 134 S.E.2d 235 (1964); *Talbert v. Talbert*, 22 Misc.2d 782, 199 N.Y.S.2d 212 (1960); *Brugh v. Bigelow*, 310 Mich. 74, 16 N.W.2d 668 (1944), and other cases cited in Annot. 4 A.L.R.3d 558 (1965).[3] The rule was also stated in *Solgaard v. Guy F. Atkinson Co.*, 6 Cal.3d 361, 99 Cal.Rptr. 29, 491 P.2d 821, 824–825 (1971), as follows:

> " * * * persons injured in the course of undertaking a necessary rescue may, absent rash or reckless conduct on their part, recover from the person *whose negligence created the peril which necessitated the rescue.*"

The emphasized portion makes it clear that in order for the rescue doctrine to be applicable, the party relying upon it must establish that some negligent act of someone created the peril with respect to which the rescue attempt was undertaken. Here, the appellant has made no allegation that any of the appellees were originally negligent in actually creating the situation he encountered on the highway. In other words, there is no negligence on the part of Dresser, Johnson, or Hatch that is claimed to have created a peril necessitating a rescue attempt by appellant. Under such circumstances the doctrine is not applicable.

## CONCLUSION

We hold that the trial judge erred in granting a summary judgment on appellant's claim of negligence against Dresser Industries and the driver Raymond Johnson, as there is a genuine issue of material fact as to whether they were negligent in failing to remove the drill-bit boxes which caused appellant's injuries. The entry of summary judgment as to all claims against appellee W. S. Hatch is affirmed. We reverse and remand with directions that a trial be held on appellant's claim against Dresser and Johnson.

Reversed in part, affirmed in part.

ROONEY, Justice, concurring in part and dissenting in part.

I would affirm the trial court in all respects. I concur with that said in the majority opinion except insofar as it finds a duty owed to pedestrian-appellant and imposed on appellees Johnson and Dresser by § 31–5–118, W.S.1977 (hereinafter referred to as "the statute").[1]

The majority opinion correctly reasons that such duty was not imposed by § 31–5–959(a), W.S.1977. The same reasoning should result in a like determination with reference to the statute. The duty imposed by language of the statute has reference to circumstances other than those in this case. It does not impose a duty to take preventa-

---

**3.** See also: 4 Blashfield Automobile Law and Practice, supra at § 102.36 and Prosser, Law of Torts, § 43, p. 258 (1971).

**1.** Section 31–5–118, W.S.1977, provides:

"(a) No person shall throw or deposit upon any highway any glass bottle, glass, nails, tacks, wire, cans, or any other substance likely to injure any person, animal, or vehicle upon such highway.

"(b) Any person who drops, or permits to be dropped or thrown, upon any highway any destructive or injurious material shall immediately remove the same or cause it to be removed.

"(c) Any person removing a wrecked or damaged vehicle from a highway shall remove any glass or other injurious substance dropped upon the highway from such vehicle."

tive action against injury to a pedestrian walking in the middle of the highway.

The following is from appellant's deposition:

"A. * * *

"Suddenly, my right foot hit something and I woke up on the road.

"Q. Where did that take place?

"A. Approximately the center of the road, perhaps a little bit to the west of the center road."

The entire tenure of the Uniform Act Regulating Traffic on Highways, §§ 31–5–101 through 31–5–1214, W.S.1977, is with reference primarily to vehicular traffic. Section 31–5–605, W.S.1977, provides:

"(a) Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

"(b) Where sidewalks are not provided any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction."

It was practicable to walk on the left side of the road. In his deposition, appellant testified:

" ' * * * So, I took the spotlight, walked on the left side of the road from the vehicle, because it was not so slippery there. * * *'

* * * * * *

" * * * then I began to cut down on an angle toward the truck when I was in a good position to do so."

If the statute imposed a duty on appellees Johnson and Dresser to pick up the drill-bit box from the center of the highway, the duty was owed to the vehicular traffic properly using the center of the highway and not to appellant, since appellees Johnson and Dresser could expect him to obey the law and walk on the left edge of the highway.

The principal design of the Uniform Act Regulating Traffic on Highways is to designate rights and duties for those operating vehicles on the highways. Provisions relative to pedestrians concern their obedience to traffic control signals, crossing highways at crosswalks and otherwise, prohibition against soliciting rides, etc., and the above-quoted directions for walking along highways. See §§ 31–5–601 through 31–5–607, W.S.1977.

The statute from which appellant and the majority opinion find the imposition of a duty to appellant on the part of appellees Johnson and Dresser to remove the drill-bit box from the center of the road (see n. 1) is just as devoid of reference to pedestrians under the circumstances of this case as is § 31–5–959(a). Subsection (a) of the statute has reference to a deliberate placing of substances on the highway. It has no application to the circumstances of this case. Subsection (c) thereof has reference to the necessity of removal of debris *at the time* a wrecked or damaged vehicle is taken from the site of an accident. It, too, has no application to the circumstances of this case. Subsection (b) thereof could be read to apply only to the prompt removal of material which would have a destructive or injurious effect on the highway itself. The placement and context of the adjectives in the sentence reflect such to have been the legislative intent. But even if the statute were taken to have for its purpose the prevention of damage to those using the highway, the resulting duty would be only to those *properly* using it—in this instance to vehicular traffic and not to a pedestrian in the middle of the highway. It should be borne in mind that the statute is a penal statute. It must be strictly construed. *Baker v. Board of Com'rs of Crook County*, 9 Wyo. 51, 59 P. 797 (1900); *Brown v. Jarvis*, 36 Wyo. 406, 256 P. 336 (1927); and *Horn v. State*, Wyo., 556 P.2d 925 (1976). Appellees Johnson and Dresser did not owe a duty to appellant under the circumstances of this case, and the summary judgment was proper.