**Pamela DINSMOORE, Individually, Plaintiff–Appellant,**

**and**

**Chelsea Dinsmoore, By and Through Pamela Dinsmoore, her Natural Mother and Guardian Ad Litem, Plaintiff,**

**v.**

**The BOARD OF TRUSTEES OF the MEMORIAL HOSPITAL OF CAMPBELL COUNTY, Defendant–Appellee.**

No. 90–8063.

United States Court of Appeals, Tenth Circuit.

June 27, 1991.

Eric M. Alden (Bryan E. Sharratt of Sharratt & Sharratt with him on the brief), Wheatland, Wyo., for plaintiff-appellant.

Debra Hecox (John Sundahl with her on the brief) of Godfrey & Sundahl, Cheyenne, Wyo., for defendant-appellee.

Before HOLLOWAY, BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Senior Circuit Judge.

Pamela Dinsmoore ("Pamela") appeals from a summary judgment order dismissing her negligence claims against the Board of Trustees of the Memorial Hospital of Campbell County ("Memorial").

On May 29, 1988, Pamela's two-year-old daughter, Chelsea Dinsmoore, was in the care of her grandmother, Joan Dinsmoore, while Pamela was returning home from vacation. Joan took Chelsea on that date to see a Dr. Schmiedt in Gillette, Wyoming, to get treatment for a skin rash. Dr. Schmiedt prescribed an inoculation for the rash and instructed that a nurse at Memorial administer it. Memorial's pharmacy mistakenly provided the nurse with an amount of the medication which was six times the amount prescribed by the doctor. In the afternoon on May 30, the nurse injected the entire amount into Chelsea. Chelsea suffered a severe reaction to the overdose and Dr. Schmiedt placed her in Memorial's intensive care unit. There was no known antidote to the drug and Memorial could do nothing but monitor Chelsea's condition.

According to Joan, Dr. Schmiedt told her that Chelsea could die, that if she made it until 10 p.m. she had a chance, and that if she made it until 1 a.m. she would be okay. According to the doctor, he never made those comments. Instead, the doctor claims that he told Joan only that there was a possibility that Chelsea's life was in danger and that Chelsea was "out of the woods" between 8 and 9 p.m. (Supp.R., Vol. I, tab 37 at 2, 3). Undisputed is that Dr. Schmiedt told Joan that she had to keep Chelsea as calm as possible; indeed, Chelsea's elevated heart rate increased dangerously whenever anyone dressed in white approached her.

Dr. Schmiedt repeatedly asked Joan to contact Pamela. Joan contacted Pamela's friends in Gillette, Wyoming, who in turn located Pamela in Casper, Wyoming. The friends reached Pamela at a lounge just as Pamela was making arrangements to spend the night in Casper. Pamela had drunk some alcohol and her blood alcohol level was at about .07 percent. Pamela called the hospital at about 9:15 p.m. and spoke with Joan. In a shaky voice, Joan told Pamela that Chelsea had been overdosed. Joan also repeatedly told Pamela that Chelsea was "safe," but that Pamela should come home instead of spending the night in Casper and that she should drive carefully. (Supp.R., Vol. III at 51–52.) Joan did not say that Chelsea could die because she made a conscious decision not to tell Pamela how serious the situation was. *Id.* at 50.

After the telephone call with Joan, Pamela left the lounge and drove over the speed limit to get to Memorial. On the way, she had an accident when a deer ran out in front of her car. Pamela tried to avoid the deer, but lost control of her car and crashed. She suffered injuries in the crash. While Pamela acknowledges that she had no plan regarding what she would do once she reached Memorial, she claims that, once there, she intended to "rescue" Chelsea (Supp.R., Vol. IV at 74).

On November 28, 1989, Pamela filed a complaint against Memorial on behalf of Chelsea and on her own behalf. In the complaint, Pamela alleged on Chelsea's behalf a claim against Memorial for negligence in injuring Chelsea by failing to supply and administer the proper dosage of prescribed medication. Pamela alleged on her own behalf claims against Memorial for infliction of emotional distress, negligent notification to Pamela concerning her child's condition, and negligence based on the "rescue doctrine." [1] Memorial filed a summary judgment motion to dismiss the claims. In response, Pamela withdrew the negligent notification and infliction of emotional distress claims.

In granting summary judgment in favor of Memorial on Pamela's remaining claim based on the "rescue doctrine," the district court determined that: the "rescue doctrine" was recognized by the Wyoming Supreme Court in *Dubus v. Dresser Industries*, 649 P.2d 198 (Wyo.1982); the court in that case held that "the rescue doctrine provides that one who is injured in reasonably undertaking a necessary rescue may recover from the person whose negligence created the situation giving rise to the rescue," *Id.* at 206; application of the doctrine requires finding four elements, only two of which exist in this case (i.e., Pamela was injured and Memorial was negligent); the two elements lacking are 1) the reasonable undertaking of a rescue and 2) the necessity of a rescue; there was no "rescue" necessary when Pamela set out for Memorial; any assistance needed was already being provided by Memorial and there was nothing Pamela could have done to aid her child; even if Pamela thought she could rescue Chelsea, such an undertaking was not reasonable as there was nothing Pamela could have done; thus, the rescue doctrine is inapplicable to the facts of this case.

The district court also determined that, even if Pamela could have made a case under the rescue doctrine, Memorial's negligence in administering an overdose to Chelsea was not the proximate cause of Pamela's accident. According to the district court, Pamela's drinking and speeding and her encounter with a deer combined to create an intervening cause of the accident as a matter of law.

Pamela and Memorial settled and dismissed Chelsea's claim. On appeal, Pamela argues that the district court erred in finding as a matter of law that 1) the "rescue doctrine" did not apply to the facts of her case; and 2) Memorial's negligence was not the proximate cause of Pamela's accident. Because we affirm the district court on the first issue, we need not address the second.

---

**1.** On appeal, Pamela asserts that she also alleged a claim against Memorial for negligence under a theory of ordinary tort liability. (Appellant's Brief at 1.) However, Pamela does not specifi- cally challenge the district court's finding to the contrary, (R., Vol. I, tab 44 at 5), and our review of the complaint reveals no such pleading.

We review de novo the district court's grant of summary judgment. *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). We construe the alleged facts in the light most favorable to the non-movant. *Id.*

In support of her first argument, Pamela asserts, *inter alia*, that the district court erred when it found that Pamela did not "reasonably undertake" a rescue because no rescue was necessary. Pamela claims that the "reasonableness of [her] actions must be addressed within the context of the situation as [she] saw it." (Appellant's Brief at 13.)

As noted by the district court, the Wyoming Supreme Court has recognized the "rescue doctrine" and defined it as providing that "one who is injured in reasonably undertaking a necessary rescue may recover from the person whose negligence created the situation giving rise to the rescue." *Dubus v. Dresser Industries, supra*, at 206. According to the *Dubus* court, " 'persons injured in the course of undertaking a necessary rescue may, absent rash or reckless conduct on their part, recover' " from the person whose negligence created the peril. *Id.* (quoting *Solgaard v. Guy F. Atkinson Co.*, 6 Cal.3d 361, 99 Cal.Rptr. 29, 491 P.2d 821, 824–25 (1971)). As Pamela asserts, a plaintiff's recovery under the Wyoming rescue doctrine appears to depend in part on that plaintiff's perception of the situation, since "there must reasonably appear to the rescuer to be imminent peril of injury or death." 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed. § 102.36 (cited with approval in *Dubus, supra*, at 206, n. 3).

However, the alleged facts seen in the light most favorable to Pamela fail to show that there *reasonably* appeared to Pamela an imminent need to rescue Chelsea. As noted by the New York Court of Appeals, "[S]omething more than a mere suspicion of danger to the life of another is requisite before the [rescue] doctrine should be implemented." *Provenzo v. Sam*, 23 N.Y.2d 256, 296 N.Y.S.2d 322, 244 N.E.2d 26, 28 (1968). Here, Pamela was repeatedly told that Chelsea was safe; any other conclusion she made was speculative. Moreover, there was nothing Pamela could do to assist Chelsea because Joan was already effectively keeping Chelsea calm. Thus, Pamela's alleged belief that she had to rescue Chelsea was unreasonable as a matter of law. *See Marks v. Wagner*, 52 Ohio App.2d 320, 370 N.E.2d 480, 484 (1977) (there is no reasonable belief of continued peril if rescuer has knowledge that victim's condition is stable requiring only medical attention).

Pamela asserts on appeal that she believed her presence was necessary because Memorial caused Chelsea's injuries in the first place. However, this assertion is inapposite because Pamela does not cite to any evidence to show that she thought Memorial continued to place Chelsea in danger after the overdose or that Memorial in fact continued to place Chelsea in danger.

Pamela also asserts a series of other arguments in support of her position that the district court erred in finding she was not covered by the rescue doctrine as a matter of law. For instance, she claims that a rescue can be investigatory, that she need not have a plan for rescue in order to be covered under the doctrine, and that the definition of "reasonableness" should take into account the relationship of the rescuer to the victim. Each of these arguments fail because they assume that Pamela could *reasonably* believe that some form of rescue was necessary when, in fact, such a belief would only have been speculative under the facts herein.

Pamela also claims that, even if it should be determined that she acted unreasonably, this should not result in an absolute bar to her claim because Wyoming is a comparative negligence state. However, the rescue doctrine specifically requires a "reasonable undertaking of a necessary rescue" before it can be utilized. Such is not the case here.

We hold that the district court correctly found/concluded that Pamela was not cov-

ered by the rescue doctrine because she did not reasonably undertake a necessary rescue as a matter of law.

AFFIRMED.